Phyllis PERRY, Claimant–Appellant,

v.

TRI–STATE MOTOR TRANSIT
COMPANY, Employer–
Respondent.

No. 23919.

Missouri Court of Appeals,
Southern District,
Division Two.

April 10, 2001.

920

Doris J. House, Joplin, Attorney for Appellant.

Ronald G. Sparlin, Blanchard, Robertson, Mitchell & Carter, P.C., Joplin, Attorney for Respondent.

GARRISON, Judge.

Phyllis Perry ("Claimant") appeals from a final award of the Labor and Industrial Relations Commission ("Commission") denying her claim for benefits. Her claim was based on injuries she received after falling from the cab of her tractor-trailer truck.

Claimant and her husband worked for Tri–State Motor Transit Company ("Tri–State") as an over-the-road truck driving team. On April 21, 1996, while hauling a load for Tri–State, they stopped for fuel in Knoxville, Tennessee. Claimant does not recall the accident. However, her husband testified that while washing the windshield on the passenger's side of the vehicle, he saw Claimant near the passenger side of the truck. He heard a thump, and saw her lying on the ground. She was unconscious and had blood on the back of her head. Claimant's husband testified that after regaining consciousness a few minutes later, Claimant was disoriented and did not know where she was. He also said that she was having trouble walking and talking. He called Tri–State, and they instructed them to go to the hospital, where her laceration received stitches. A CT scan performed on April 22, 1996 was normal, and a skull x-ray was negative.

Claimant filed a claim for benefits, alleging that she suffered permanent and total disability from the fall. She claims that, as a result of the head injury, she suffers from memory problems, sensitivity to light, problems talking, taking care of herself and driving.

The administrative law judge ("ALJ") issued her award on October 1, 1999, finding that Claimant fell on April 21, 1996, sustaining a laceration, but denied benefits. The ALJ stated:

I do not find that the accident caused any of the current complaints of [Claimant]. This is based on the records of Dr. [Monte] Kahler [ ("Dr.Kahler") ] that showed he was treating her for symptoms before the accident and the opinion of Dr. [Hish] Majzoub [ ("Dr.Majzoub") ] who testified that [Claimant] has no findings consistent with trauma but does have findings consistent with small vessel disease resulting in dementia. I find this evidence more persuasive than Dr. [Bernard] Abrams [ ("Dr.Abrams") ] or [Claimant]. I do not find [Claimant's] testimony regarding her symptoms and physical abilities or that she was unable to work credible in light of the evidence presented that showed she was passing physicals up to July 1998. Furthermore, she was actually driving a truck in 1996 and 1997 so there is no evidence that she missed any work as a result of the laceration.

Claimant filed an application for review from the ALJ's award to the Commission. On September 25, 2000, the Commission issued its Final Award Denying Compensation in which it affirmed the ALJ's decision and award. Claimant appeals from that award.

██ In reviewing a workers' compensation award, we review the findings of the Commission and not those of the ALJ. *Gordon v. Tri–State Motor Transit Co.,* 908 S.W.2d 849, 852 (Mo.App. S.D.1995). Where, as here, the Commission incorporates the ALJ's award and decision, we consider the findings and conclusions of the Commission as including the ALJ's

award. *Kaderly v. Race Bros. Farm Supply*, 993 S.W.2d 512, 514 (Mo.App. S.D. 1999). We first examine the whole record, viewing the evidence and all reasonable inferences therefrom in the light most favorable to the award, in order to determine if the record contains sufficient competent and substantial evidence to support the award. *Walsh v. Treasurer of the State*, 953 S.W.2d 632, 635 (Mo.App. S.D. 1997); *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). If there is sufficient competent and substantial evidence to support the award, we then determine if the award is against the overwhelming weight of the evidence. *Id.* In our review, we are mindful that we may not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Id.* Its interpretation and application of the law, however, are not binding on this Court and fall within our realm of independent review and correction. *Id.*

In her first point on appeal, Claimant alleges that:

> The Commission erred in finding that [Claimant's] injuries were not caused by her accident at work. There was not competent and substantial evidence to support Commission's findings that her injuries were not caused by her accident at work. Further, the Commission's findings that [Claimant's] injuries were not caused by her accident at work were against the overwhelming weight of the evidence.

In support, Claimant presents seven sub-points.[1]

■ In the first of Claimant's sub-points, she argues that the Commission erred in finding that she sustained only a laceration from which she recovered in that "[Claimant] by a fall 4 feet onto concrete, hit the back of her head hard on the concrete, suffering a concussion, post-concussion syndrome, and immediate and continuing mental deterioration, loss of verbal skills, and balance problems therefrom."

■ As aforementioned, this Court does not substitute its own judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Alexander v. D.L. Sitton Motor Lines*, 851 S.W.2d 525, 527 (Mo. banc 1993). Further, the Commission is free to disbelieve uncontradicted and unimpeached testimony. *Id.* In the instant case, the Commission did not err in finding that Claimant's complaints were related to dementia and not her fall from the truck. Dr. Kahler, Claimant's family practitioner, testified that a week prior to the accident Claimant complained of having vision problems and that she was stumbling into things. Dr. Kahler diagnosed Claimant as having a lack of balance and a questionable inner ear malfunction and recommended that Claimant have a CT scan to rule out a brain tumor or other disorder. A CT scan performed the day after Claimant's injury was normal, and a CT scan run two and a half weeks later was also normal. A MRI performed a year and eight months after the injury was read as reflecting changes that were "most likely relate[d] to chronic small vessel ischemic disease." Dr. Majzoub, one of Claimant's neurologists, also testified that he was told by Claimant that she had memory loss prior to the fall; that Claimant's MRI was not consistent with an injury as a result of trauma, but rather with small vessel disease as a result of atherosclerosis or hardening of the arteries; that Claimant did not exhibit any

---

1. The use of sub-points is discouraged, as this practice rarely conforms with the dictates of *Thummel v. King*, 570 S.W.2d 679, 688 (Mo. banc 1978). *See Franke v. Franke*, 913 S.W.2d 846, 850, n. 3 (Mo.App. E.D.1995).

symptoms that were consistent with residual impairment as a result of head trauma; and that, in his opinion, Claimant's condition was a result of dementia. This portion of Claimant's point is therefore denied.

In her second sub-point under Point One, Claimant alleges that the Commission erred in relying on Dr. Majzoub "who found that [Claimant] had memory problems prior to her accident when it is clear from [Claimant's] prior medical records that no such prior memory problems existed." Decisions concerning the weight to be given expert opinions lie within the Commission's sole discretion and cannot be reviewed by this Court. *See Cochran v. Industrial Fuels & Res.*, 995 S.W.2d 489, 494 (Mo.App. S.D.1999). Here, the Commission gave greater weight to the expert opinion of Dr. Majzoub concerning Claimant's memory problems than to the expert opinion of Dr. Abrams, another of Claimant's neurologists. Our deferential standard of review regarding the credibility of witnesses and the weight to be given to expert opinions prevents us from gainsaying the Commission's decision. *See Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo. App. E.D.1994). This portion of Claimant's point is also denied.

In her third sub-point, Claimant argues that the Commission erred in finding that she was being treated for "symptoms" prior to her accident when those "symptoms" were not dementia but instead were the side effects of Luvox, an anti-depressant drug. Once again, we do not substitute our judgment on the weight of the evidence or on the credibility of witnesses for that of the Commission. *Kaderly*, 993 S.W.2d at 518. The Commission is free to believe all, part, or none of the evidence presented at trial. *Id.* While there was much discussion as well as speculation in the record about the cause of Claimant's symptoms prior to her fall, the Commission could have found from the evidence presented that Dr. Kahler was treating Claimant for symptoms related to dementia prior to her fall and not those related to side effects from Luvox. Dr. Kahler testified that he did not attribute Claimant's symptoms prior to the fall, which included vision problems and stumbling, to Luvox, but instead to some type of brain disorder, and recommended a CAT scan. Four months after the fall, Dr. Kahler still felt that Claimant's symptoms were indicative of some type of brain disorder and his diagnosis was transient ischemic episode. This portion of Claimant's point is denied.

In Claimant's fourth sub-point, she contends that the Commission erred in ignoring or disregarding the evidence of Tom Carson, Claimant's friend, and Ira Perry, Claimant's husband, that Claimant was fine before the accident and her problems started immediately after the accident. When the resolution of an issue hinges on the credibility of witnesses or the weight given to certain evidence, the scope of our review is significantly curtailed. *Cochran*, 995 S.W.2d at 495. The weight to be given evidence rests within the discretion of the Commission and it alone determines the credibility of witnesses. *Id.* Here, the testimony of both Tom Carson and Claimant's husband that she was having no problems prior to the fall was contradicted by the evidence presented by Dr. Kahler. Dr. Kahler's testimony and records showed that on at least two of Claimant's visits to his office in the month before her fall she had health complaints. On March 20, 1996, Claimant reported that she had difficulty swallowing, problems with her moods, and that she was hard to get along with. On April 16, 1996, Claimant complained of vision problems and reported that she was stumbling

into things. Where evidence is conflicting, resolution is for the Commission and its choice is binding upon this Court. *Id.* The Commission did not abuse its discretion in determining the credibility of witnesses who testified as to the onset of Claimant's health problems. This portion of Claimant's point is denied.

█ In her three remaining sub-points, Claimant essentially contends that the Commission erred in ignoring testimony from both neurologists, Dr. Majzoub and Dr. Abrams, that Claimant was not qualified to drive, even if she may have driven at times by reason of economic necessity, and in finding that she was working in 1996 and 1997.

One of the central issues before the Commission was whether Claimant was permanently and totally disabled. Whether Claimant was able to continue driving a truck following the fall was crucial to that issue. Claimant correctly points out that both neurologists felt that she was unqualified to drive. However, Dr. Mazoub indicated that he felt Claimant was not capable of driving due to emotional instability, which was unrelated to the accident. Dr. Abrams did state that Claimant should not drive, but noted that she had in fact driven.[2]

█ The determination of whether Claimant was totally and permanently disabled was a question of fact for the Commission. *See Julian v. Consumers Markets, Inc.,* 882 S.W.2d 274, 275 (Mo.App. S.D.1994). Further, the Commission did not have to base its decision only upon the testimony from the neurologists, it could make its findings from the entire evidence.

*Id.* Here, Dr. Jeffrey Woodward, who provided some of Claimant's initial authorized treatment, indicated that by May 16, 1996, less than one month after her fall, Claimant was able to return to driving full-time with no restrictions on her driving. A DOT physical given in October 1996 and a "Driver Physical Examination" form dated July 20, 1998 also indicated that Claimant was qualified to drive. There was also ample evidence presented that Claimant did, in fact, drive. A review of the driving logs kept by Claimant and her husband from April 1996 through May 1997 showed numerous entries that indicated that Claimant drove during the period covered by the logs. There was also evidence that Claimant, in addition to driving for Tri–State following the fall, also drove for R & R Trucking. Payroll records for R & R Trucking listed Claimant as an employee from June 1997 until December 1997.

After our review of the record, we do not find that the Commission erred in its determination that Claimant was capable of driving following the fall and that she "actually dr[ove] a truck in 1996 and 1997." Therefore, Claimant's last three sub-points are denied.

There was competent and substantial evidence to support the Commission's findings that Claimant's health complaints were not caused by her fall at work, and the Commission's decision to deny benefits was not against the overwhelming weight of the evidence. Claimant's first point is therefore denied.

We do not reach the merits of Claimant's three remaining points on appeal because each of the points fails to comply with the requirements of Rule 84.04.[3]

---

**2.** When Claimant was evaluated by Dr. Abrams on August 5, 1997, the following history was taken: "[Claimant] and her husband now work for R & R [Trucking].... She is driving. Her husband says she weaves all over the road and he does not think her response time is normal. She is driving out of economic necessity."

**3.** All rule references are to Missouri Rules of Civil Procedure (2001).

Rule 84.04(d)(2) provides that a point relied on in an appellant's brief shall "(A) identify the administrative ruling or action the appellant challenges; (B) state concisely the legal reasons for appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."

Claimant's three remaining points set forth only abstract claims of error without stating the legal reasons for the claim or an explanation of why, in the context of the case, the law supports the claim of reversible error. If we attempt to interpret Claimant's points as stated, the Court will be forced to act as an advocate for Claimant, which we cannot do. See *Thummel*, 570 S.W.2d at 686; *Myrick v. Eastern Broad., Inc.*, 970 S.W.2d 885, 886 (Mo.App. S.D.1998). A failure to substantially comply with Rule 84.04 preserves nothing for appellate review. *Libberton v. Phillips*, 995 S.W.2d 66, 67 (Mo.App. S.D.1999). Allegations of error not properly briefed "shall not be considered in any civil appeal." Rule 84.13(a).

The order of the Commission is affirmed.

PREWITT and RAHMEYER, JJ., concur.