PSYCHIATRIC HEALTHCARE CORPORATION OF MISSOURI d/b/a Lakeland Regional Hospital, Respondent,

v.

DEPARTMENT OF SOCIAL SERVICES, Division of Medical Services, Appellant.

No. WD 61691.

Missouri Court of Appeals, Western District.

April 1, 2003.

James Robert Layton, Jefferson City, MO, for Appellant.

Richard Donald Watters, St. Louis, MO, for Respondent.

Before RONALD R. HOLLIGER, P.J., PAUL M. SPINDEN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

This appeal arises from a judgment by the Cole County Circuit Court reversing the decision of the Administrative Hearing Commission ("Commission"). The Commission ruled that the Missouri Department of Social Services, Division of Medical Services ("the Division") could recoup payments previously made to Psychiatric Healthcare Corporation ("Hospital") for medical care and treatment of Medicaid beneficiaries. On appeal, Hospital asks this court to uphold the circuit court's declaratory judgment that two of the Division's regulations are invalid and asks this court to reverse the Commission's decision as to a particular patient, identified as Patient 7.

## Factual and Procedural Background

The Division is charged by law, pursuant to section 208.201 RSMo, with the responsibility of administering the federal Medicaid Program [1] in Missouri. In order to receive federal funds for its administration of the program, the State has implemented statutes and regulations to comply with federal Medicaid requirements. 42 U.S.C. § 1302 and §§ 1396, *et seq.* As authorized by statute, the Division has implemented specific regulations applicable to licensed health care providers authorized under section 208.153 to provide Medicaid services in Missouri.[2] Federal regulations govern the Division's rules and regulations applicable to Medicaid providers.[3] The Di-

---

1. Title XIX of the Federal Social Security Act (42 U.S.C. §§ 1396 *et seq.*)

2. Section § 208.152.1(16) authorizes payment by the State to those providers.

3. The specific Federal regulations pertinent to this case are 42 CFR § 431.107, governing agreements between the State and the service providers; 42 CFR § 433.300, mandating recovery of overpayments for Medicaid services; 42 CFR § 482.30, setting forth the require-

vision is required by those federal regulations to conduct monitoring of Medicaid providers and review of Medicaid claims, and is empowered by section 208.201.5 RSMo to do so. This monitoring and review is conducted under the authority and procedural guidelines found at 13 CSR 70–15.020, 13 CSR 70–15.070, and 13 CSR 70–15.090.[4]

The procedure the Division uses to fulfill its monitoring and review duties is as follows. The Division contracts with a review agency, CIMRO, Inc., to conduct three types of utilization reviews of inpatient care for psychiatric patients under twenty-one years of age. Those reviews are: (1) the admission review, performed at the point of admission to determine whether inpatient care is medically necessary; (2) the continuing stay review, conducted while the patient is in the hospital to determine whether continued stay as an inpatient is medically necessary; and (3) certificate of need reviews, which are conducted several months after the patient is discharged from the hospital to determine whether the inpatient stay was medically necessary and whether the hospital has complied with specific patient record keeping requirements.

*The Admission and Continuing Stay Reviews:*

The admission and continuing stay reviews both are governed by 13 CSR 70–15.020. The purpose of these reviews is to prospectively determine whether the patient's admission and continuing stay are "medically necessary."[5] With regard to the admission review, when a Medicaid patient arrives at a hospital, the hospital calls CIMRO to obtain approval for admission. The hospital's staff informs CIMRO what is contained in the medical record, and the CIMRO nurse may ask questions of the hospital about the patient's condition. The nurse reviewer compares the patient's medical information with a set of written screening criteria to determine whether to approve admission. That set of written criteria, used for both the admission and continuing stay reviews, are the severity of illness/intensity of service ("SI/IS") criteria mandated for use by regulations 13 CSR 70–15.020(6) and 13 CSR 70–15.020(11)(B). These criteria, referenced to herein as "Criteria A" are set forth in Appendix A to this opinion. If the nurse reviewer approves the admission, the hospital is advised of an "initial length of stay" determination, *i.e.*, the number of days inpatient hospital care is initially approved for that patient.

Once the initial length of stay is exhausted, if the hospital believes the patient requires a longer stay, the hospital again contacts CIMRO. The CIMRO nurse reviewer again reviews the medical record information for the patient, compares it to the same SI/IS criteria (Criteria A), and makes a decision about the additional length of stay to be approved. Generally, for continuing stay reviews, CIMRO nurses approve five days at a time. A single patient may have multiple continuing stay reviews during the course of hospitalization.

ments for utilization reviews; and 42 CFR § 441.152 and 42 CFR § 456.481, setting forth the requirements for the Certificate of Need forms.

4. The adoption and implementation of these specific regulations is authorized by §§ 208.152, 208.153, 208.161 and 208.201, RSMo.

5. The term "medically necessary" is defined by the Division's regulations at 13 C.S.R. 70–15.020(1)(M): "Medically necessary means an inpatient hospital service that is consistent with the recipient's diagnosis or condition and is in accordance with the criteria as specified by the department."

*The Retrospective CON Reviews:*

Several months after the patients are discharged, CIMRO, under the Division's direction, conducts a post-utilization, or certification of need ("CON") review of the treatment records of a sample of the provider's patients. A quarterly review involving a sample of 25% of a provider's claims is done in psychiatric cases for patients less than twenty-one years of age. Guidelines and procedures for the retrospective CON reviews are found at 13 CSR 70–15.070. There are two types of CON reviews applicable to this appeal. The first is a retrospective re-review of the medical necessity of the patient's hospitalization, and the second is a review for the presence of a timely completed CON form.

The first type of CON review, performed six to eighteen months after the patient is discharged, is based on a review of the patient's entire medical records. First, a nurse reviews the record, applying a new set of SI/IS criteria, which differ from the original SI/IS criteria used in the admission and continuing stay process. This second set of criteria are referred to at the Division's regulation 13 CSR 70–15.070(11)(D) as the "Child and Adolescent Assessment Psychiatric Treatment screening criteria." These criteria are referenced to herein as "Criteria B" and are set forth in Appendix B to this opinion. If the nurse reviewer determines that the new criteria are met, no further action is taken. If the nurse determines that the new criteria are not met, she refers the case to a physician reviewer for a re-determination of the medical necessity of the hospitalization. In making this re-determination, the physician reviewer is not required to apply

any written criteria (including either Criteria A or Criteria B); rather, each physician reviewer must determine, based on his own medical judgment, whether the admission or the continued stay was medically necessary.

The second type of CON review is conducted merely to determine whether a qualifying and timely-filed CON form is present in the patient's file. The Division's regulations 13 CSR 70–15.070(5) and (6) require a written and signed CON form to be completed as to each patient within fourteen days of admission.[6] If on CON review the form is not present, the hospital has twenty days in which to submit the original form (which must have been completed within the first fourteen days after admission). If the hospital does not produce a copy of the timely and properly completed form, all payment for the patient's entire hospitalization is recouped by the Division pursuant to 13 CSR 70–15.070(11).

*Application of the Rules*

In the case at hand, Hospital is an inpatient psychiatric hospital located in Springfield, Missouri, providing psychiatric services to juveniles who qualify for Medicaid coverage. Hospital receives payment for its services to Medicaid patients from the Division. This appeal is the result of determinations by the Division after CON reviews to recoup $92,445.34 from Hospital for Medicaid payments made for acute inpatient psychiatric services provided to eighteen adolescent Medicaid beneficiaries between 1996 and 1998.

For each of the patients involved in this case, CIMRO initially approved the admission and the continuing stays at Hospital

---

**6.** In the CON form, the treatment team certifies that "(A) Ambulatory care resources available in the community do not meet the treatment needs of the youth; (B) Inpatient treatment under the direction of a physician is needed; and (C) The services can reasonably be expected to improve the patient's condition." 13 CSR 70–15.070(5). The federal regulation mandating this certification is found at 42 C.F.R. § 441.152.

as being "medically necessary" based on the above described procedures. The CON reviews in this case resulted in either (1) physician reviewers determining that some or all of the inpatient hospitalization was not medically necessary, or 2) a determination that a properly completed CON review form was not present in the patient's file. Based on these reviews, the Division ordered recoupment of funds paid to Hospital for the treatment of the eighteen patients originally involved in this case. At or before the Commission hearing, the Division admitted it had improperly recouped payments on six of those eighteen patients: Patients 3, 4, 9, 10, 13, and 18. These patients are not at issue in this appeal. The remaining patients fall into two categories: (1) those for whom recoupment was ordered based on a finding that there was not a timely and properly completed CON form included in the patient's file (Patients 6, 7, 8, 11, 15, 16, and 17); and (2) those for whom recoupment was ordered based on a physician reviewer's failure to find "medical necessity" for the continued stays (Patients 1, 2, 5, 12, and 14). The Commission reversed the Division's recoupment decisions as to Patients 1 and 12, and the Division has not appealed that decision to this court. Thus, in this second category of patients, only Patients 2, 5, and 14 remain at issue in this appeal.

*Patient 7*

The issue with regard to Patient 7—the subject of Point III below—concerns a technical denial issued by the Division in a letter to Hospital dated February 16, 1999. The Division asserted it was entitled to recoupment of the entire amount paid to Hospital for Patient 7's treatment. The letter indicates that recoupment was required because a timely-filed CON form was not included in the patient's file. Hospital contends that the Division's recoupment decision as to Patient 7 was improper because, according to Hospital, it proved that there was a timely and properly completed CON form in the patient's record. Indeed, the Commission found that the CON form for Patient 7 was timely completed. The Division officer testified at the hearing that even if the CON form was properly and timely completed, the Division still sought recoupment because of one or more other reasons. The officer did not specify what the reasons were. The Commission noted that the actual reason for recoupment was never given by the Division. The Commission upheld the recoupment for Patient 7, however, stating:

> [Hospital] argues that we must order the [Division] to return the amount recouped for the care of Patient # 7 because the CON form was timely completed. However, the witness [at the hearing] stated that the technical denial was issued for another reason other than timeliness of completion. Although the witness did not specify the reason, [Hospital] did not prove that timeliness of completion was the only reason for a technical denial, and thus did not prove that the money recouped for the care of Patient # 7 should be returned. [Hospital] is not entitled to a refund of the money recouped for Patient # 7.

*Proceedings Before the Commission and the Circuit Court:*

Between August 1998 and April 2000, Hospital filed four complaints with the Commission, pursuant to sections 208.156 and 621 .055, appealing the Division's recoupment decisions in this case. By order dated May 15, 2000, the Commission consolidated all four cases into one. That case was heard by the Commission on October 17–18, 2000.

In addition to appealing the Division's recoupment decisions to the Commission,

Hospital also contested the validity of two of the Division's regulations as being arbitrary, capricious, unreasonable, and in violation of due process. Those regulations are: (1) 13 CSR 70–15.070(11)(F), which permits CIMRO physician reviewers performing retrospective CON reviews to deny all or part of a patient's hospitalization based on the physician's medical judgment without using any written criteria and standards; and (2) 13 CSR 70–15.070(11), which imposes a penalty of total forfeiture of all compensation if the CON form was not timely or properly completed.

In its October 12, 2001 decision, the Commission granted Hospital partial relief as to the recoupment issues, reversing the Division's decision with regard to Patients 1 and 12. The Commission, however, did not address the validity of the contested regulations because it lacks jurisdiction to rule on the validity of agency regulations. The Commission upheld the Division's recoupment decision as to all the other patients and, specifically, upheld the Division's determination as to Patient 7.

On November 9, 2001, Hospital sought relief in the circuit court, pursuant to section 536.100 and Rule 100.01, contesting the Commission's recoupment decisions. Because the Commission lacked jurisdiction to rule on the validity of the contested rules, Hospital's appeal to the circuit court included two counts for declaratory judgment as to the validity of the rules, pursuant to section 536.050.1.[7]

On June 18, 2002, the Honorable Byron Kinder of the Cole County Circuit Court granted the additional relief that Hospital sought. The court declared the physician review step found at 13 CSR 70–15.070(11)(F) invalid and void because it violates section 536.014(3) and because it denies the Hospital due process of law. The court also declared the complete recoupment sanction found at 13 CSR 70–15.070(11) invalid and void because the sanction of total forfeiture imposed by the rule was overly harsh, punitive, and in violation of section 536.014(3) and due process. The court also reversed the Commission's decision as to Patient 7.

With regard to Patient 7, the court found that the Commission erred in requiring Hospital to not only prove the Division's stated reason for recoupment to be in error but to also prove that no unstated reasons could have justified the recoupment decision. The court ordered the Division to repay to Hospital the monies recouped for Patients 1, 2, 5, 6, 7, 8, 11, 12, 14, 15, 16 and 17. On July 24, 2002, the Division filed a notice of appeal to this court.

Although the Division filed the notice of appeal from the circuit court, Hospital files the appellant's brief and reply brief, and the Division files the brief as the respondent, pursuant to Rule 84.05(e).[8] Hospital brings three points on appeal. In its first two points, Hospital asks this court to affirm the circuit court's declaratory judg-

7. That statute provides in pertinent part:
 The power of the courts of this state to render declaratory judgments shall extend to declaratory judgments respecting the validity of rules, or of threatened applications thereof, and such suits may be maintained against agencies whether or not the plaintiff has first requested the agency to pass upon the question presented. . . . .

8. Rule 84.05(e) provides in relevant part:

If the circuit court reverses a decision of an administrative agency and the appellate court reviews the decision of the agency rather than of the circuit court, the party aggrieved by the agency decision [Hospital] shall file the appellant's brief and reply brief. . . . The party aggrieved by the circuit court decision [Division] shall prepare the respondent's brief. . . .

ment decisions with regard to the two contested regulations, in which the court declared both regulations void and invalid. In Hospital's final point, it asks this court to reverse the Commission's decision as to recoupment of payments for treatment of Patient 7.

## Standard of Review

■ With regard to Points I and II, the standard of review when reviewing a declaratory judgment is the same as in any other court-tried case. *Laclede County. v. Douglass*, 43 S.W.3d 826, 827 (Mo. banc 2001). In *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), the Supreme Court declared that the standard of appellate review for any case decided by the court without a jury, *including a declaratory judgment action*, is whether the circuit court's judgment "erroneously declares the law, or ... erroneously applies the law." *State ex rel. Robinson v. Office of Attorney Gen.*, 87 S.W.3d 335, 338 n. 4 (Mo.App. 2002) (emphasis added). Review of legal determinations is *de novo*, and issues involving the interpretation of statutory language are questions of law. *Lakin v. Gen. Am. Mut. Holding Co.*, 55 S.W.3d 499, 503 (Mo.App.2001). "In cases involving questions of law, this court reviews the trial court's determination independently, without deference to that court's conclusions." *Id.*

■ As to Point III, regarding Patient 7, on appeal from a judgment of the circuit court reversing the decision of the Administrative Hearing Commission, the court of appeals reviews the decision of the Commission and not the circuit court. *Dir., Mo. Dep't of Pub. Safety v. Murr*, 11 S.W.3d 91, 95 (Mo.App.2000). The decision of the Commission will be upheld unless it is not supported by competent and substantial evidence upon the whole record; it is arbitrary, capricious or unrea-sonable; it is an abuse of discretion; or it is otherwise unauthorized by law or in violation of constitutional provisions. See *Id.*; *KV Pharm. Co. v. Mo. State Bd. of Pharmacy*, 43 S.W.3d 306, 310 (Mo. banc 2001); § 621.193; and § 536.140.

## Point I: Invalidity of Physician Review Regulation

■ On appeal, Hospital questions the application and validity of certain rules adopted and implemented by the Division. In its first point, Hospital asks this court to rule that the circuit court correctly declared the Division's regulation at 13 CSR 70–15.070(11)(F) invalid and void because the regulation sets no standard for medical review decisions by physician reviewers and thus permits arbitrary, capricious, and discriminatory decisions in violation of section 536.014 RSMo and due process of law. The Division's regulation 13 CSR 70–15.070(11)(F) provides:

> If the [screening criteria] is not met, the nurse or social worker reviewer refers the case to a physician reviewer who is a licensed physician for a determination of documentation and medical necessity. The physician reviewer is not bound by criteria used by the nurse or social worker reviewer. The physician reviewer uses his/her medical judgment to make a determination based on the documented medical facts in the record[.]

In finding the regulation invalid, the circuit court explained:

> The [Division]'s rule ... gives physician reviewers the power to make decisions that a Medicaid beneficiary's care was not medically necessary and thereby deny payment to a hospital, without applying any standards much less explicit standard to prevent arbitrary, capricious and discriminatory decisions.....

\* \* \* \* \* \*

It is not appropriate to authorize medical care at the time it is being delivered using a set of specific criteria to determine its medical necessity and then after the fact reverse the medical necessity decision by ignoring the written criteria and allowing a different set of reviewers to apply their own personal interpretation of what is medically necessary care and what is not. The [Division]'s regulation at 13 CSR 70–15.070(11)(F) is hereby declared void....

▉▉▉▉ The circuit court found this regulation to be arbitrary and capricious in violation of § 536.014. That statute provides in pertinent part: "No department, agency, commission or board rule shall be valid in the event that ... (3) The rule is so arbitrary and capricious as to create such substantial inequity as to be unreasonably burdensome on persons affected." "Arbitrary and capricious" has been defined in the context of rules and regulations as "willful and unreasoning action, without consideration of and in disregard of the facts and circumstances...." *Jones v. City of Jennings*, 595 S.W.2d 1, 3 (Mo. App.1979). In a recent application of this statute, the court declared that "[a]n administrative agency rule is not unreasonable just because it may be burdensome to a particular person, or simply because of a *subjective feeling* that the regulation is arbitrary or unduly burdensome." *Massage Therapy Training Inst., LLC v. Mo. State Bd. of Therapeutic Massage*, 65 S.W.3d 601, 608 (Mo.App.2002) (emphasis added) (citations omitted). Rather, the court explained, the test is whether the regulation bears "a rational relationship to a legitimate state interest." *Id.* If so, it is neither arbitrary, capricious, nor unreasonable. *Id.*

Hospital complains that one set of SI/IS criteria (Criteria A) is used by the reviewing nurses in making the admission and continuing stay decisions, and a different set of SI/IS criteria (Criteria B) is used by the reviewing nurses in the retrospective CON reviews. The two sets of criteria differ and appear to measure different things, *i.e.,* the first set clearly is a test to determine the need for inpatient hospitalization, but the second set includes a checklist of procedures that are to be conducted and documented during the hospitalization.

The connection between Criteria B and the resulting "medical necessity" determination by the physician reviewer (independent of Criteria B) is not obvious. Division explains that the "medical necessity" decision by the physician reviewer is a type of "saving mechanism" for cases that do not meet the second set of criteria and would otherwise be disapproved. In other words, even if the criteria are not met, if the physician reviewer determines that, in his or her medical judgment, the inpatient hospitalization was medically necessary, the hospital will be "saved" from recoupment. We have been provided no information as to how often that happens. However, it is clear that this step of the process functions as a "saving mechanism" to prevent recoupment when a hospital cannot show compliance with Criteria B but when the hospitalization was nevertheless medically necessary in a physician's medical opinion.

Nevertheless, these facts—that the two sets of criteria differ and that the connection between the second set of criteria and the "medical necessity" review is not altogether clear—do not render the regulation mandating this procedure invalid. Each hospital is afforded ample notice as to (1) the contents of both sets of criteria, and (2) how each set of criteria is used in the utilization review process. The Department's regulations and provider manuals set forth CIMRO's review process. The

hospital is provided those regulations and provider manuals.

■ It is true that a violation of due process exists where "a person of ordinary intelligence does not receive fair notice from the language employed in the law what conduct that law requires or forbids." *Missourians for Tax Justice Educ. Project v. Holden,* 959 S.W.2d 100, 105 (Mo.1997) (citing *United States v. Harriss,* 347 U.S. 612, 617, 74 S.Ct. 808, 98 L.Ed. 989 (1954)). Where, as here, the service provider is fully informed of the specific requirements embodied in the regulations and is made aware of the manner in which those requirements will be applied to them, it cannot be said that the regulation is arbitrary and capricious or a violation of due process.

Additionally, as noted above, the test for whether an administrative agency regulation is arbitrary, capricious, or unreasonable under section 536.014 is whether it bears "a rational relationship to a legitimate state interest." *Massage Therapy,* 65 S.W.3d at 608. Here, the second set of SI/IS criteria, about which Hospital complains, is based on the "Child and Adolescent Assessment Psychiatric Treatment screening criteria," and the ultimate purpose of the criteria is to determine whether the inpatient hospitalization was medically necessary. This determination is required by federal regulations for the state to receive federal Medicaid funds. Thus, the regulation mandating the use of these criteria does in fact bear a rational relationship to a legitimate state interest and, therefore, is not arbitrary, capricious, nor unreasonable.

Hospital also complains that the regulation is arbitrary and capricious in violation of section 536.014, because, after the patient records are found not to comply with the second set of SI/IS criteria, the case is referred to a physician reviewer who then uses neither set of SI/IS criteria, nor any specified written criteria at all, but relies entirely upon his or her own medical judgment as to whether the inpatient treatment was "medically necessary."

Hospital complains that the regulation provides for arbitrary and capricious decisions by physician reviewers because they use no criteria or standards to determine the medical necessity of patient care, and because the decisions are contrary to the earlier contemporaneous decisions made pursuant to written criteria and standards. Because the reviewing physicians' decisions may result in the Division's recoupment from providers of thousands of dollars per patient, they are inequitable and burdensome on providers, according to Hospital. Furthermore, Hospital argues, it is also arbitrary, capricious, and unreasonable for CIMRO's physician reviewers to "ignore" the definition of "medically necessary," found at 13 CSR 70–15.020(1)(M), when determining the medical necessity of care.

The regulation is not arbitrary and capricious in allowing the physician reviewers to exercise their professional medical judgment as a saving mechanism. The law frequently recognizes the need to allow physicians to exercise their professional medical judgment with regard to "medical necessity" issues. To find that it is legally impermissible to allow physicians to determine "medical necessity" without specific written criteria could threaten the role of physicians in a wide range of circumstances where the law permits (and sometimes requires[9]) physicians to apply

9. See, *e.g., State Bd. of Registration for the Healing Arts v. Fallon,* 41 S.W.3d 474, 478 (Mo. banc 2001) in which it was held that a

determination of medical necessity by an insurance company reviewer, who was a licensed physician, was a "medical decision,"

their professional medical expertise to make such determinations. In addition to these two regulations (along with 13 CSR 70–15.090), which allow the physician to "use his/her medical judgment" in making medical necessity decisions, such application is common in matters involving, for example: insurance coverage, *e.g., State Bd. of Registration for the Healing Arts v. Fallon,* 41 S.W.3d 474 (Mo. banc 2001), *Hundley v. Wenzel,* 59 S.W.3d 1 (Mo.App. 2001), *Williams v. Jacobs,* 972 S.W.2d 334 (Mo.App.1998); medical malpractice, *e.g., Scott v. SSM Healthcare St. Louis,* 70 S.W.3d 560, 568 (Mo.App.2002), *Groves v. Ketcherside,* 939 S.W.2d 393 (Mo.App. 1996), *Keller v. Mo. Baptist Hosp. of Sullivan,* 800 S.W.2d 35 (Mo.App.1990), *Eichelberger v. Barnes Hosp.,* 655 S.W.2d 699, 705 (Mo.App.1983); workers' compensation issues, *e.g., Mickey v. City Wide Maint.,* 996 S.W.2d 144 (Mo.App.1999); civil rights of psychiatric patients, *e.g., Bonds v. Mo. Dept. of Mental Health,* 887 S.W.2d 418 (Mo.App.1994); licensing board decisions, *e.g., Fallon,* 41 S.W.3d 474; implied consent in emergency situations, *e.g.,* § 431.063 RSMo; withdrawing or withholding medical treatment at a patient's request, *e.g.,* § 404.820; and abortion, *e.g., State v. Mucie,* 448 S.W.2d 879 (Mo.1970), §§ 188 .039, 191.320, and 208.152.

The Division also points to the fact that on direct examination of the Hospital's expert witness, Dr. Richard Aiken (who is also the medical director for Hospital), the doctor alluded to the necessity of physicians, especially in the field of psychiatry, to rely upon their experience, training, and intuition to make "ultimately subjective" or "somewhat subjective" decisions as to diagnosis and treatment. Hospital fails to show that the regulation is arbitrary and capricious.

and was therefore subject to investigation by

Hospital's argument also ignores the fact that the regulation embodies procedural safeguards. When a physician reviewer makes an initial finding of "no medical necessity," the Hospital is notified as to that decision. 13 CSR 70–15.070(11)(G). The Hospital then may request a reconsideration review of the decision by another physician reviewer, pursuant to 13 CSR 70–15.070(11)(G) and (H), at which time the Hospital may submit additional information. Then, the Hospital may obtain review of the reconsideration decision by the Administrative Hearing Commission. § 208.156. Finally, the decision of the Commission is subject to review by the circuit court, pursuant to § 621.145 and § 536.140. The procedural safeguards tend to help prevent arbitrary and capricious decisions as well.

*Due Process*

■ Hospital also contends that the regulation violates its constitutional right to due process because it is "unconstitutionally vague." Hospital points out that it is well settled in the law that "due process requires that a statute or rule have sufficient standards to prevent its arbitrary or discriminatory enforcement." *Laubinger v. Laubinger,* 5 S.W.3d 166, 172 (Mo.App. 1999) (citing *State v. Allen,* 905 S.W.2d 874, 877 (Mo. banc 1995)).

In the circuit court's finding of a due process violation, it observed that the "vagueness doctrine of the due process clause 'assures that guidance, through explicit standards,' will be afforded to those who must apply a regulation in order to avoid possible arbitrary and discriminatory application," quoting *Baugus v. Dir. of Revenue,* 878 S.W.2d 39, 41 (Mo. banc 1994). The court concluded that the regulation is in violation of due process because it "gives physician reviewers the power to

the licensing board.

make decisions ... without applying any standards, much less explicit standards to prevent arbitrary, capricious and discriminatory decisions."

 "An allegation that a rule or statute is void for vagueness is grounded in the due process clauses of the Fifth and Fourteenth amendments to the U.S. Constitution, and Article I, § 10 of the Missouri Constitution." *Laubinger*, 5 S.W.3d at 173. A statute is unconstitutionally vague if it fails to "speak with sufficient specificity and provide sufficient standards to prevent arbitrary and discriminatory enforcement." *State v. Allen*, 905 S.W.2d 874, 877 (Mo. banc 1995) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972)). The "vagueness doctrine assures that guidance, through explicit standards, will be afforded to those who must apply the statute, avoiding possible arbitrary and discriminatory application." *State v. Young*, 695 S.W.2d 882, 884 (Mo. banc 1985).

In civil cases involving "void for vagueness" arguments, however, courts have recognized that the precision and specificity that is required in criminal statutes is not required in civil statutes. See, *e.g., Vill. of Hoffman Estates, Inc. v. Flipside*, 455 U.S. 489, 498, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Doe v. Dep't of Soc. Servs.*, 71 S.W.3d 648, 651 (Mo.App.2002); *Hampton Foods, Inc. v. Wetterau Fin. Co.*, 831 S.W.2d 699, 701 (Mo.App.1992); and *Fitzgerald v. City of Maryland Heights*, 796 S.W.2d 52, 55 (Mo.App.1990). The Supreme Court explained:

> The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because

businesses ... can be expected to consult relevant legislation in advance of action. ... The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.

*Village of Hoffman Estates*, 455 U.S. at 498–99, 102 S.Ct. 1186.

In declaring the regulation invalid, the circuit court relied upon a Florida case, in which the court found similar practices in that state to be "simply unfair" and reversed a decision of the Florida Medicaid agency that retroactively denied payment for hospital care. *Orlando Gen. Hosp. v. Dep't of Health & Rehabilitative Servs.*, 567 So.2d 962, 966 (Fla.Dist.Ct.App.1990). As stated in *Massage Therapy*, however, a rule or regulation is not unreasonable "simply because of a *subjective feeling* that the regulation is arbitrary or unduly burdensome." 65 S.W.3d at 608.

Under our *de novo* review of these legal questions, and for all the foregoing reasons, we conclude that the circuit court's declaratory judgment proclaiming the regulation invalid and void was in error.

Because the circuit court erred in declaring the regulation invalid, we review the decision of the Commission with regard to patients 2, 5, and 14. The decision of the Commission will be upheld if it is supported by competent and substantial evidence upon the whole record; is not arbitrary, capricious or unreasonable; is not an abuse of discretion; or is not otherwise unauthorized by law or in violation of constitutional provisions. See §§ 621.193; 536.140. We defer to the Commission's determinations as to the credibility of witnesses and the weight to be given to expert opinions. *Perry v. Tri–State Motor Transit Co.*, 41 S.W.3d 919, 923 (Mo.App. 2001). A review of the entire record re-

veals that the Commission did not err in upholding the Division's recoupment of funds on these three patients. The Commission's decision as to Point I is affirmed.

### Point II: Invalidity of Complete Forfeiture Regulation

■ Next, Hospital argues that the Circuit Court correctly found the Division's regulation at 13 CSR 70–15.070(11) to be invalid and void. Hospital asserts that the penalty of complete forfeiture of all payment for medically necessary care for the sole reason that the hospital failed to have a certificate of need form (CON form) in a patient's medical record is so arbitrary, capricious and inequitable as to be unreasonably burdensome in violation of § 536.014 RSMo (2000). The regulation in question states:

> Documentation of certification of need [as required by 13 CSR 70–15.070(5)] ... shall be a part of the individual's medical record. All required documentation must be a part of the medical record at the time of audit to be considered during the audit. Failure of the medical record to contain the required documents at the time of audit shall result in recoupment.

13 CSR 70–15.070(11).

The circuit court found that the CON form serves no purpose in the care and treatment of patients separate and apart from the federal requirement merely that it exist. For that reason, the Court found:

> [T]he penalty of forfeiture of all payment for the patients' entire length of stay, merely because the CON form was not timely or accurately completed, [is] unreasonably burdensome and [is] so completely out of proportion to the significance of the form as to be punitive, arbitrary and capricious. .... Accordingly, the Court declares that that portion of 13 CSR 70–15.070(11), which

authorizes the [Division] to recoup all payment ... when the CON form is not timely or appropriately completed, to be void. ...

The court concluded that the regulation is invalid and void because the overly harsh sanction of forfeiting all payment for failure to complete the CON form is punitive, arbitrary, capricious and unreasonably burdensome in violation of § 536.014(3). That statute provides in pertinent part: "No department, agency, commission or board rule shall be valid in the event that ... (3) The rule is so arbitrary and capricious as to create such substantial inequity as to be unreasonably burdensome on persons affected."

■ Similar to the Court's findings, Hospital contends that to deny all reimbursement for such a minor matter is extremely harsh, punitive, inequitable, arbitrary, capricious, and unreasonably burdensome and as such it violates section 536.014. Furthermore, Hospital argues, adopting such a regulation is an abuse of the Division's authority to adopt reasonable rules and regulations. A regulatory action is unreasonable, even if technically within the agency's authority, if it is oppressive. *State ex rel. City of St. Louis v. Pub. Serv. Comm'n of Mo.*, 329 Mo. 918, 47 S.W.2d 102, 104 (banc 1931).

Arbitrary and capricious means "willful and unreasoning action, without consideration of and in disregard of the facts and circumstances.…" *City of Jennings*, 595 S.W.2d at 3. As discussed *supra*, a rule or regulation is not unreasonable merely because it is burdensome to a particular person, nor simply based on a "subjective feeling that the regulation is arbitrary or unduly burdensome." *Massage Therapy*, 65 S.W.3d at 608. Rather, if the regulation bears "a rational relationship to a legitimate state interest[,]" it is neither

arbitrary, capricious, nor unreasonable. *Id.*

In cases where regulations "concern[ ] matters of economics, business and social policy" as opposed to fundamental rights, "the appropriate standard of review is whether the regulation in question b[ears] any rational relationship to a legitimate legislative goal[.]" *Gray v. City of Florissant,* 588 S.W.2d 722, 725 (Mo. App.1979); see also *Am. Motorcyclist Ass'n v. City of St. Louis,* 622 S.W.2d 267, 269 (Mo.App.1981). Under this rational relationship or "rational basis" test, "[l]egislatures are . . . afforded broad discretion in attacking social and economic problems, so long as they act in a rational manner," and the challenger bears the burden of showing that the law is not rational. *State v. Zoellner,* 920 S.W.2d 132, 135 (Mo.App. 1996). In addition to proving that the regulation is irrational, the plaintiff also "must negative every conceivable basis upon which the rule may be justified." *Gray,* 588 S.W.2d at 725.

The regulation challenged here clearly fits within the category of matters of economic, business, and social policy as opposed to infringing on any fundamental rights. The question becomes, then, does the regulation bear a rational relationship to a legitimate state interest?

The CON form certification is mandated by federal regulation 42 C.F.R. § 441.152. Pursuant to that rule, the treatment team is required to "certify that . . . (1) Ambulatory care resources available in the community do not meet the treatment needs of the recipient; (2) Proper treatment . . . requires services on an inpatient basis . . .; [and] (3) The services can reasonably be expected" to help the recipient. To comply with that federal mandate, the Division has adopted a regulation requiring a "written and signed certification of need for services." 13 CSR 70–15.070(5). To enforce that requirement, the regulation in question requires that the CON form "be part of the medical record at the time of audit," and provides that "[f]ailure of the medical record to contain the required documents at the time of audit shall result in recoupment." 13 CSR 70–15.070(11).

The Division concedes that perhaps it could impose a lesser penalty and achieve the same result, but asserts that "the choice of sanctions is not subject to strict scrutiny; it need not be narrowly tailored to address the problem." The question, according to the Division, is not whether a lesser penalty would work; it is whether this particular penalty is arbitrary or capricious. The Division points out, and we agree that, given the threat of lost federal funds, it is difficult for us to say categorically that the penalty is arbitrary or capricious.

Similar to the regulation discussed in Point I, the administration of this regulation also requires procedural safeguards to avoid arbitrary and capricious enforcement decisions. The Commission found, based on the testimony of Annette Walther, CIMRO's division manager, that Hospital is notified if a timely and properly completed CON form is not present in the patient file, and the Hospital than has twenty days to submit it in the event it has been misplaced or misfiled. Also, if only one of the two required signatures is timely, there is no recoupment.

The regulation serves a legitimate state interest because, as already stated, it helps keep Missouri in compliance with the federal regulations so as to help ensure continued federal participation in funding. We cannot say it is unreasonable to require that the form be completed within 14 days of admission. A basic understanding of human nature would indicate that allowing hospitals to retrospectively complete

the form at the time of audit after the hospitalization would have a tendency to result in a loss of accuracy. And if the hospitals become casual about the need for timely completion of the CON form, deciding they can always do it later if necessary, the hospitals would create a risk that Missouri would be found to be so lax in requiring the necessary documentation as to be considered in non-compliance with federal regulations. While the result of a hospital's non-compliance with the fourteen day rule is harsh, and quite probably a lesser penalty might serve as well as a total recoupment, and while it might be desirable for the State to consider some adjustments in the current regulation, we cannot say that the rule or the penalty is arbitrary and capricious. We conclude, therefore, under our *de novo* review of this legal issue, that the circuit court's declaratory judgment proclaiming the regulation invalid and void was in error.

The circuit court erred in declaring the regulation invalid. We, therefore, review the decision of the Commission with regard to the technical denials of payments for Patients 6, 8, 11, 15, 16, and 17. The decision of the Commission will be upheld if it is supported by competent and substantial evidence upon the whole record; is not arbitrary, capricious or unreasonable; is not an abuse of discretion; or is not otherwise unauthorized by law or in violation of constitutional provisions. See §§ 621.193; 536.140. We defer to the Commission's determinations on the credibility of witnesses and the weight to be given expert opinions. *Perry*, 41 S.W.3d at 923. After careful review of the record, we conclude that the Commission did not err in upholding the Division's recoupment decisions on these patients. The Commission's decision as to Point II is affirmed.

10. Petitioner's Exhibit 12.

## Point III: Commission's Decision as to Patient 7

■ Finally, Hospital argues that the Commission erred in ruling, pursuant to 13 CSR 70–15.070(11), that the Division could recoup its prior payments to Hospital for the care and treatment of Patient 7. Hospital contends it proved by substantial and competent evidence that the certificate of need form for Patient 7 was timely and accurately filed in the patient's medical record. Based on the CON form for Patient 7, which is included in the record filed with this court,[10] it is apparent that the form was timely completed, and the Commission so found.

Commission made the following factual findings with regard to Patient 7:

> 61. Payments for Patient ... # 7 ... were denied and money was recouped because CIMRO determined that the form was not properly timely completed.....
>
> ✻ ✻ ✻ ✻ ✻ ✻
>
> 63. Patient # 7 was admitted to [Hospital] on April 18, 1997. Patient # 7's CON form was completed on April 22, 1997, which was timely. CIMRO issued a technical denial for another reason [FN: The reason for this technical denial was never given.] and the [Division] recouped $7,127.19 from [Hospital] for the care of Patient # 7.

The Commission determined:

> [Hospital] argues that we must order the [Division] to return the amount recouped for the care of Patient # 7 because the CON form was timely completed. However, the witness stated that the technical denial was issued for another reason other than timeliness of completion. Although the witness did not specify the reason, [Hospital] did not

prove that timeliness of completion was the only reason for a technical denial, and thus did not prove that the money recouped for the care of Patient #7 should be returned. [Hospital] is not entitled to a refund of the money recouped for Patient #7.

Joint Exhibit 5 was attached to a "Joint Stipulation of Facts" statement which was presented as Joint Exhibit A before the Commission. In that statement, the parties stipulated: "Each of the overpayment decisions identifying paragraph A as the reason [including Patient 7] is based on Respondent's alleged *failure to have a certification of need form completed within 14 days* of the patients' admission." (Emphasis added.) Later, in the joint stipulation, the parties state: "Attached hereto as Exhibit 5 is a summary or compilation of data from numerous records with respect to each of the patient decisions ... which were based on Petitioner's alleged *failure to complete the certification of need forms in a timely manner* (Paragraph A)." (Emphasis added.) Joint Exhibit 5, which is entitled "Denials for Failure to Timely Complete Certificate of Need Form," clearly shows that the CON form for Patient 7 was timely completed.

The Division argues that Joint Exhibit 5 cannot be deemed to be proof that timeliness was the reason for the recoupment decision on Patient 7. The Division argues that because the body of Exhibit 5 clearly shows that Patient 7 was admitted on April 18, 1997, and that the certification of need was completed on April 22, 1997, timeliness could not have been the issue with regard to Patient 7. The Division proposes, therefore, that the denial obviously had to be based on something other than timeliness. We disagree.

In its "Amended and Consolidated Complaint" to the Commission, Hospital alleged that "each of the denials under paragraph A [the paragraph asserting CON form violations] is based on Respondent's *alleged failure to have a certification of need form completed at the time of the patients' admission* or in cases of emergency admissions within 14 days of the admission." If the Division had any other basis for denying payment, one could expect the Division to say so in a responsive pleading. It does not appear from the record supplied to this court that the Department filed any responsive pleadings in answer to the allegations contained in this Consolidated Complaint. The Division failed to counter the pleading of the Hospital that the denial of Patient 7 was based only upon timeliness of completion.

The Division presents Exhibit 2, its denial letter dated February 16, 1999, as proof that Hospital knew "the real basis" for the denial on Patient 7. Exhibit 2 is a form letter indicating to Hospital that certain patients were being denied due to CON form violations. The letter states only that payment for Patient 7 was being denied because of a "CON form violation."

If the reason for the denial as to Patient 7 was that the CON form simply was not included in the patient's file at the time of review, which the Division now contends on appeal, the Division did not say so. Also, it does not appear that the Commission understood the reason for the denial at the time of its ruling. As to Patient 6, the Commission specifically found that the CON form was timely completed, but that it was not present in the patient's file at the time of the review and affirmed the recoupment of all payments made for Patient 6's treatment. As to Patient 7, the Commission made no such finding.

It appears that no one, including the Commission, knew why there was a technical denial as to Patient 7. At the hearing before the Commission, the CIMRO representative testified that the CON form was

timely completed, but that it was not approved. "It's a technical denial for a different reason," stated the representative. The Commission noted in its findings of fact that *"[t]he reason for this technical denial was never given."*

We fail to see how the AHC deemed it proper to require the Hospital to refute the reason for the technical denial when the reason was something different from the reason specified by the Division in correspondence. While generally the burden of proof must fall on the petitioner, the pleadings before the AHC are designed to narrow the issues for hearing so it is clear what the issues are as to which the petitioner must bear the burden. If the petitioner alleged that the Division denied a benefit for a specific reason based on the Division's correspondence, and the Division never pleads there are other reasons for denial, the burden of showing disqualification should be placed on the Division.

The decision of the Commission must be supported by competent and substantial evidence in order to be upheld. See *Murr,* 11 S.W.3d at 95; § 536.140. There is no competent and substantial evidence in the record to support any justification or authority for the Division's denial of payment as to Patient 7. When the Division has denied payment for a specific reason, and communicates to the Hospital that reason, and then fails to plead responsively to the Hospital's assertion that such was the reason for the denial, the AHC cannot force the Hospital to carry the burden of showing compliance with all technical criteria. We reverse the ruling of the Commission with regard to Patient 7.

## Conclusion

We reverse the declaratory judgment of the Circuit Court declaring the two Division regulations invalid and void. The decision of the Administrative Hearing Commission is affirmed, except as to the issue of recoupment as to Patient 7. As to Patient 7, we reverse the Commission's decision that the Division is entitled to recoupment.

HOLLIGER and SPINDEN, JJ., concur.

## Appendix A

### *CHILD/ADOLESCENT PSYCHIATRIC*

#### Severity of Illness

A. Clinical Findings

1. Acute disabling symptoms as a response to bio-psychosocial stress, such as impaired reality testing, disordered or bizarre behavior, psychotic organic brain symptoms, depression, anxiety, hysteria (conversion, dissociation, depersonalization, somatization), phobia(s), compulsion(s), hypochondriasis, insomnia, over/under activity, eating disorder (anorexia nervosa or bulimia), etc.

2. Acute danger to property or self or others, including developmental danger (probably attributable to primary psychiatric disease).

3. Medical necessity for diagnostic procedure available only in the acute hospital setting, e.g. special drug therapy or continuous psychiatric observation.

4. Psychiatric disorder significantly complicating evaluation and treatment of a physiological illness.

5. Severe impairment of interpersonal, familial, occupational-academic functioning and/or normal developmental progress.

6. Documented evidence of child abuse/neglect not associated with an acute medical condition.

### Intensity of Service

A. Treatment

1. Continuous observation and control of behavior to protect self and others.

2. Comprehensive therapy plan requiring close supervision because of concomitant medical conditions.

3. Special treatment modalities available only in the hospital setting due to need for special equipment or ancillary services.

4. Receiving daily individualized or group psychotherapy requiring regular physician supervision in the hospital.

### DISCHARGE SCREENS

1. Documentation by psychiatrist of lessening or resolution of symptoms to allow for functioning outside of the acute setting.

2. Documentation of evidence of absence of reasonable expectation of significant psychiatric improvement with continued inpatient treatment.

3. Documentation of lack of patient involvement with treatment.

4. Documentation indicating failure to formulate, implement or periodically revise a treatment plan.

5. Documentation of absence of the patient from facility for two or more therapeutic passes with reference in the record as to the therapeutic indications or result of passes.

* *SCREENING CRITERIA DO NOT CONSTITUTE PHYSICIAN STANDARDS OF CARE. THEY ARE RE-

VIEW SCREENING CRITERIA FOR USE BY REVIEW COORDINATORS.*

### Appendix B

### CRITERIA FOR CHILD/ADOLESCENT–ASSESSMENT PSYCHIATRIC TREATMENT

#### Severity of Illness

Services will be covered if one or more of the following is present and descriptive of the child or adolescent's condition or situation:

1. Acute disabling symptoms as a response to biopsychosocial stress, such as impaired reality testing, disordered or bizarre behavior, psychotic organic brain symptoms, depression, anxiety, hysteria (conversion, dissociation, depersonalization, somatization), phobia(s), compulsion(s), hypochondriasis, insomnia, over/under activity, eating disorder, etc.

2. Acute danger to property or self or others, including developmental danger (probably attributable to primary psychiatric disease).

3. Medical necessity for diagnostic procedure available only in the acute hospital setting, e.g., special drug therapy or continuous professional psychiatric observation.

4. Psychiatric disorder significantly complicating evaluation and treatment of a physiological illness.

5. Severe impairment of interpersonal, familial, occupational-academic functioning and/or normal developmental progress.

#### Intensity of Service

1. Physicians note within 24 hours of admission, documenting physical examination, mental status examination, reason for admission, admitting diag-

nosis and initial treatment plan (including problem formulation and treatment goals.)

2. Within five (5) days of admission a medical record by the attending physician with input from other members of the interdisciplinary treatment team. It must be:

 A. Directed toward attainment of appropriate medically necessary treatment goals.

 B. Responsive to relevant developmental and therapeutic needs.

 C. Evolving in response to changes in the patient's clinical state and knowledge during the process of treatment.

3. Physician's progress note at least three (3) times per week, to include as appropriate any additions, deletions, or changes in the comprehensive individual plan of care.

4. Daily nursing care note. Nursing care must be reflected in the medical record to reinforce the need for inpatient rather than outpatient treatment. The nursing notes must contain reference to the verbal interchanges between the patient and nursing staff.

5. Individual or group medical psychotherapy provided by professional staff as ordered by the treating physician, five (5) times per week.

6. Assessment of the family or surrogate family and community agencies, resulting in problem formulation, treatment goals, and treatment plan (To be documented within at least 7 days.)

7. Appropriate educational or vocational program. (To be documented within at least 7 days.)

8. Appropriate educational or vocational evaluation resulting in problem formulation treatment goals and treatment plan. (To be documented within 14 days.)

9. Documentation of daily involvement by the specified physician qualified to work with children, adolescents and their families in evaluation, treatment, treatment planning, treatment evaluation, and/or supervision of treatment.

10. Age appropriate daily recreation/activity therapies.

11. Documentation of a discharge plan which includes written recommendations on each patient. This process should commence upon the child's admission to the unit.

### Discharge Screens

1. Documentation by Psychiatrist of lessening or resolution of symptoms sufficient to allow for functioning outside of the acute setting/or transfer to lower level of care.

2. Documented evidence of absence of reasonable expectation for significant Psychiatric improvement with continued inpatient treatment.

3. Documentation by the attending physician that the evaluation/treatment plan has been successfully completed.