**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 34879/34880/34881**

| | | |
|---|---|---|
| **KOOTENAI MEDICAL CENTER (RE: TERESA K.),** | ) ) ) | |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | **Coeur d'Alene, April 2009 Term** |
| **IDAHO DEPARTMENT OF HEALTH AND WELFARE,** | ) ) ) ) | **2009 Opinion No. 108** **Filed: September 24, 2009** |
| Respondent-Appellant. | ) ) ) | **Stephen Kenyon, Clerk** |
| **KOOTENAI MEDICAL CENTER (RE: JENNIFER G.),** | ) ) ) ) | **AMENDED OPINION, THE COURT'S PRIOR OPINION DATED AUGUST 24, 2009 IS** |
| Petitioner-Respondent, | ) ) | **HEREBY WITHDRAWN** |
| v. | ) ) | |
| **IDAHO DEPARTMENT OF HEALTH AND WELFARE,** | ) ) ) | |
| Respondent-Appellant. | ) ) ) | |
| **KOOTENAI MEDICAL CENTER (RE: JOSHUA M.),** | ) ) ) | |
| Petitioner-Respondent, | ) ) | |
| v. | ) ) | |
| **IDAHO DEPARTMENT OF HEALTH AND WELFARE,** | ) ) ) | |
| Respondent-Appellant. | ) ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Honorable John T. Mitchell, District Judge.

The decision of the district court is <u>reversed</u>.

1

Honorable Lawrence G. Wasden, Attorney General, Boise, for appellant. Whitaker Riggs argued.

Paine Hamblen, Coeur d'Alene, for respondents.  Michael Hague argued.

_____

HORTON, Justice

This appeal consists of three consolidated cases arising from petitions for judicial review of orders issued by Appellant Idaho Department of Health and Welfare (the Department). Respondent Kootenai Medical Center (KMC), through its Northern Idaho Behavioral Health Unit (NIBH), provided inpatient psychiatric care under Idaho's Medicaid program.  The Department denied KMC at least some portion of Medicaid reimbursement in all three cases. KMC appealed the Department's reimbursement decisions and filed petitions for judicial review with the district court.  The district court reversed the decisions of the Department and ordered that the Department reimburse KMC in full in all three cases.  We reverse the decision of the district court and decline to award attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In each of these consolidated cases, KMC provided inpatient psychiatric treatment to an adolescent patient and KMC applied for Medicaid reimbursement from the Department. Because none of the patients were admitted to the Medicaid program at the time of their admission to NIBH, the Department retrospectively reviewed each case for medical necessity after the patients had been discharged.  The Department contracted with Qualis Health (Qualis), a Quality Improvement Organization (QIO), to perform retrospective reviews in each of the cases.  Dr. Robert Lehman, a consultant to Qualis, reviewed each case.  Dr. Lehman had practiced medicine as a pediatrician for over 20 years.  Dr. Lehman recommended only partial reimbursement to KMC in each case.  KMC asked that Qualis reconsider Dr. Lehman's reimbursement decisions.  Qualis hired an unidentified peer review psychiatrist, board certified in psychiatry, to review Dr. Lehman's decisions.  The peer review psychiatrist agreed with Dr. Lehman's reimbursement decisions. Following administrative hearings, in each case the hearing officer upheld Qualis's reimbursement decisions.  Upon petition for review, the Department Director affirmed each of the hearing officer's decisions.  The pertinent factual and procedural details as to each case are as follows:

2

On August 19, 2005, J.M., a 16 year-old male, attempted suicide by cutting his wrists. On August 20, 2005, J.M. was admitted to NIBH for inpatient psychiatric care. J.M. was evaluated and treated at NIBH until his discharge on August 31, 2005. KMC applied to the Department for reimbursement for the entire length of J.M.'s stay. On March 6, 2006, Qualis approved reimbursement for the period of August 20, 2005 through August 24, 2005, but denied reimbursement for the period of August 25, 2005 through August 31, 2005. KMC requested reconsideration of the decision, and on March 23, 2006, Qualis upheld its initial decision. The hearing officer concluded that KMC did not establish by a preponderance of the evidence that the medical chart sufficiently documented the medical necessity of inpatient psychiatric care.

On December 23, 2005, J.G., a fourteen year-old female, was admitted to NIBH. Immediately prior to her admission, J.G. had been in a juvenile detention center and had made several suicidal statements. J.G. also cut herself while incarcerated. NIBH treated J.G. from December 23, 2005 until she was discharged on January 4, 2006. KMC applied to the Department for reimbursement for the entire length of J.G.'s stay. Qualis approved reimbursement for the period of December 23, 2005 through December 28, 2005, but denied reimbursement for the period of December 29, 2005 through January 4, 2006. KMC requested reconsideration of the decision, and on May 25, 2006, Qualis upheld its initial decision. The hearing officer concluded that KMC did not establish by a preponderance of the evidence that the medical chart sufficiently documented the medical necessity of inpatient psychiatric care.

On November 6, 2005, T.K., a nineteen year-old female was admitted to NIBH. T.K. had a history of mental health problems and was previously hospitalized in a youth residential program for approximately two years. T.K. was brought to NIBH by the police from a women's shelter. NIBH treated T.K. from November 6, 2005 through December 14, 2005. On November 19, 2005 T.K. was committed to the custody of the Department. KMC applied for reimbursement for the entire length of T.K.'s stay at NIBH. Qualis Health approved reimbursement for the period of November 6, 2005 through November 8, 2005, but denied reimbursement for the period of November 9, 2005 through December 14, 2005. Subsequently, the Department reimbursed KMC for the period of November 19, 2005 through December 12, 2005 through a non-Medicaid fund. KMC requested reconsideration of the decision, and Qualis Health upheld its initial decision. On appeal, the hearing officer found that the medical record

3

did not justify inpatient hospitalization after November 9, 2005. The Department affirmed the hearing officer's decision.

KMC filed petitions for judicial review in each case. The district court concluded that KMC had a due process right to cross-examine the reviewing psychiatrist and, because KMC was denied this right, ordered that the comments of the reviewer be stricken from the record. The district court further determined that Dr. Lehman's opinions be stricken as "he had no idea what other less restrictive facilities there are in this area." Finally, the district court reversed the decision of the Director of the Department and ordered that the Department pay KMC's claims "in full." The Department timely appealed to this Court.

## II. STANDARD OF REVIEW

When reviewing a decision of the district court acting in its appellate capacity, we directly review the district court's decision. *Rammell v. State, Dep't of Agric.*, ___ Idaho ___, 210 P.3d 523, 526 (2009) (citing *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008)). The standard of judicial review of an agency action is prescribed by statute. Under the Idaho Administrative Procedures Act, a reviewing court is required to affirm the agency's decision unless its findings, inferences, conclusions, or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion. I.C. § 67-5279(3). Accordingly, this Court defers to the agency's findings of fact unless they are clearly erroneous. *Lane Ranch P'ship. v. City of Sun Valley*, 144 Idaho 584, 588, 166 P.3d 374, 378 (2007) (citing *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 46 P.3d 9 (2002)). Further, the agency decision must prejudice a substantial right of the Appellant. I.C. § 67-5279(4); *Price v. Payette County Bd. of County Comm'rs*, 131 Idaho 426, 429, 958 P.2d 583, 586 (1998).

"Due process issues are generally questions of law, and this Court exercises free review over questions of law." *Neighbors for a Healthy Gold Fork v. Valley County*, 145 Idaho 121, 127, 176 P.3d 126, 132 (2007) (citing *Cowan v. Bd. of Comm'rs of Fremont County*, 143 Idaho 501, 510, 148 P.3d 1247, 1256 (2006)).

## III. ANALYSIS

The Medicaid Act, Title XIX of the Social Security Act (the Act), is a cooperative federal-state program designed to allow states to receive matching funds from the federal

4

government to finance medical services to certain low-income persons. *Schweiker v. Gray Panthers*, 453 U.S. 34, 36 (1981). States may choose to participate in the Medicaid program by submitting a plan for medical assistance that is approved by the federal government. 42 U.S.C. § 1396a. Once a state voluntarily elects to participate in the program, it must comply with the requirements imposed by the Act and applicable regulations. *McCoy v. Dept. of Health and Welfare*, 127 Idaho 792, 794, 907 P.2d 110, 112 (1995) (citing *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985)). The Act gives participating states considerable flexibility in determining the scope of coverage they must provide, although states must provide care to needy individuals in at least seven general categories of medical services, including inpatient hospital services. *Id.* (citing *Hern v. Beye*, 57 F.3d 906, 910 (10th Cir. 1995)).

In Idaho, Medicaid services include medically necessary inpatient psychiatric hospital services for individuals under age twenty-one, such as those provided by KMC through NIBH. IDAPA 16.03.09.079.[1] Federal law does not appear to require states to provide inpatient psychiatric treatment in their Medicaid programs. 42 U.S.C. § 1396d(r); 42 C.F.R. § 441.56(c). However, even when a state elects to provide an optional service, that service becomes part of the state Medicaid plan and is subject to the requirements of federal law. *Tallahassee Mem. Reg'l Med. Ctr. v. Cook*, 109 F.3d 693, 698 (11th Cir. 1997) (citing *Sobky v. Smoley*, 855 F.Supp. 1123, 1127 (E.D. Cal. 1994)). Idaho hospitals must therefore provide inpatient psychiatric care to their patients as long as medical necessity exists. *Id.* Once the federal government approves its plan, the State is entitled to federal reimbursement for a portion of the costs of administering a Medicaid program, and for a portion of payments to health care providers. 42 U.S.C. § 1396b(a). The Department reimburses providers such as KMC for the recipient's admission and length of stay, subject to preadmission, concurrent, or retrospective review by the Department or its designee. IDAPA 16.03.09.079.08; 16.03.09.080.02. Pursuant to 42 C.F.R. 431.630, a State plan may provide for the review of Medicaid services through a contract with a QIO. The Department has contracted with Qualis to serve as its QIO and perform preadmission, concurrent, and retrospective reviews for inpatient hospital services.

The Department raises four issues on appeal: (1) whether KMC has standing to assert the due process rights of its patients; (2) whether the documentation requirement found in IDAPA

---

[1] All citations in this opinion are to IDAPA rules in effect at the time of the proceedings before the hearing officer.

16.03.09.079.05 conflicts with the certification requirement found in 42 C.F.R. 441.152; (3) whether the hearing officer's preliminary orders were supported by substantial evidence in the record; and (4) whether the Department is entitled to an award of attorney fees and costs on appeal.

**A. The district court erred when it concluded that KMC has standing to assert the due process rights of its patients.**

As previously noted, the district court struck from the record the findings and conclusions of the peer review psychiatrist because KMC did not have the opportunity to cross-examine the psychiatrist. The Department argues that KMC, as a Medicaid provider, is not entitled to the due process protections afforded a patient, that the findings and conclusions of the peer review psychiatrist are admissible under the hearsay rules applicable to administrative hearings, and federal regulations prevent the disclosure of the identity of the peer review psychiatrist and KMC is therefore not entitled to cross-examine the peer review psychiatrist. The Department further argues that a provider's right to cross-examine a QIO peer reviewer is not a substantial right. In response, KMC contends that it has due process rights entitling it to de novo review before the hearing officer, where it can present evidence and cross-examine any adverse witnesses. In the instant case, KMC was not able to cross-examine the QIO peer review psychiatrist(s).

**1. KMC does not have third-party standing to assert the due process rights of its patients.**

KMC argues that Qualis's method of conducting retrospective review in the instant cases violates 42 C.F.R. § 431.205(d) and the due process protections outlined in *Goldberg v. Kelley*, 397 U.S. 254 (1970). KMC appropriately focuses on this stage of proceedings, as IDAPA 16.05.03.131 provides that "[t]he hearing officer shall consider only information that was available to the Department at the time the decision was made" subject to an exception for "additional relevant information that was not presented to the Department with good cause." In the event that the hearing officer finds that there is such additional relevant information, the hearing officer is required to remand the matter to the Department for further consideration. *Id*. In each of these cases, the hearing officer focused solely on the evidence contained in the patients' medical records, as this was the information available to the Department at the time of the reimbursement decision. Apart from due process claims predicated upon 42 C.F.R. § 431.205(d), KMC does not assert that the hearing officer erred in applying this regulation, nor

6

does KMC assert that there was good cause for not providing additional information to the Department at an earlier time.

As a threshold matter, before delving into the specific due process violations alleged by KMC, this Court must examine whether 42 C.F.R. § 431.205(d), requiring that the due process standards of *Goldberg* be met, is applicable to KMC. Code of Federal Regulation, 42 § 431.205(d) establishes the provisions of hearing systems for applicants and recipients and provides in relevant part that: "The hearing system must meet the due process standards set forth in *Goldberg v. Kelly*, 397 U.S. 254 (1970), and any additional standards specified in this subpart." The Department challenges the applicability of 42 C.F.R. § 431.205 to the instant cases because the regulation appears in subsection E of the Act, which applies only to "applicants" and "recipients," and not "providers" such as KMC.

The definitions applicable to the Medicaid program support the Department's arguments, as does the case law. The regulations define "applicant" as:

> An individual whose written application for Medicaid has been submitted to the agency determining Medicaid eligibility, but has not received final action. This includes an individual (who need not be alive at the time of application) whose application is submitted through a representative or a person acting responsibly for the individual."

42 C.F.R. § 400.203. A "recipient" is "an individual who has been determined eligible for Medicaid." *Id*. A "provider" is

> either of the following:
>
> (1) For the fee-for-service program, any individual or entity furnishing Medicaid services under an agreement with the Medicaid agency.
> (2) For the managed care program, any individual or entity that is engaged in the delivery of health care services and is legally authorized to do so by the State in which it delivers the services.

*Id*. Here, KMC is engaged in the delivery of health care services and is legally authorized to do so in Idaho. Thus, KMC falls within the definition of "provider."

In *Banks v. Sec'y of the Indiana Family and Soc. Services Admin.*, 997 F.2d 231 (7th Cir. 1993), the court concluded that 42 C.F.R. § 431.205(d) defined the procedural requirements applicable to individuals seeking or receiving Medicaid benefits, but that its provisions did not provide for notice and a hearing regarding when a provider's claim for reimbursement is denied. *Id*. at 243. "Rather, the regulations cover an individual's initial and continued eligibility for Medicaid services-hence use of the terms 'applicants' and 'recipients'-not provider

7

reimbursement determinations." *Id*. (citing 42 C.F.R. § 431.220 and *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 786-87 (1980) (stating "[t]he Government cannot withdraw these direct [Medicaid] benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits.")). Thus, the court in *Banks* concluded that the procedural protections afforded by 42 C.F.R. § 431.205(d) and *Goldberg* only apply to state agency denial or withdrawal of Medicaid benefits. *Id*. The instant cases do not involve the denial or withdrawal of Medicaid benefits; rather, the issue is whether a Medicaid provider is entitled to reimbursement for services it has rendered to Medicaid patients.

KMC argues that it has third-party standing to assert the rights of patients who faced a loss of services. KMC argues that *Singleton v. Wulff*, 428 U.S. 106 (1977), is applicable to, and dispositive of, the instant cases. However, we conclude that the holding in *Singleton* is inapplicable to the instant cases. In *Singleton*, two Missouri-licensed physicians, acting on behalf of their patients, challenged a provision in Missouri's Medicaid plan excluding abortions from medical services eligible for Medicaid funding, unless the abortions were "medically indicated." *Id*. at 108-09. The three-judge panel assigned to the case dismissed the action, finding the physicians lacked standing. *Id.* at 111. The United States Supreme Court held that the doctors had standing to assert the rights of their patients because of the closeness of the doctor-patient relationship; a woman cannot safely secure an abortion without the aid of a physician, and an impecunious woman cannot easily secure an abortion without the State paying the physician. *Id*. at 117. Therefore, the physicians were uniquely qualified to litigate the constitutionality of the State's interference with, or discrimination against a woman's constitutionally protected decision to obtain an abortion. *Id*. Additionally, the Court found that "several obstacles" existed which prevented women from asserting their rights, including the desire to protect their decisions from the publicity of litigation and the inherent time limitation in which a woman may obtain an abortion. *Id*. Thus, the Court concluded that it was appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision. *Id*. at 118.

The instant cases are distinguishable from *Singleton*. Unlike the women in *Singleton*, the State has not interfered with a constitutionally protected right of these patients. All three patients received medical care from KMC. Further, because each patient was Medicaid eligible, the patients were not responsible for paying for the medical services. Under 42 C.F.R. § 447.15, "[a]

8

State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who accept, as payment in full, the amounts paid by the agency." Thus, "[o]nce a health care provider commits to Medicaid assistance for a patient, the provider is barred from billing the patient for an amount in excess of the State's Medicaid disbursement." *Mallo v. Pub. Health Trust of Dade County*, 88 F.Supp.2d 1376, 1387 (S.D.Fla.2000) (footnote omitted). Simply stated, "[t]he federal Medicaid scheme … gives providers the opportunity to make a 'calculated choice' whether to seek reimbursement from Medicaid or from the patient." *Miller v. Gorski Wladyslaw Estate*, 547 F.3d 273, 284 (2008) (interpreting 42 U.S.C. § 1396a(a)(25)(C); 42 C.F.R. §§ 447.15, 447.20(a)).

KMC argues that the State has interfered with the instant patients' rights to have their Medicaid expenses paid by Medicaid. However, the Department is willing to pay the patients' expenses with Medicaid funds; the dispute is the amount of Medicaid funds to which KMC is entitled. This dispute does not implicate the rights of the patients, who have already received medical treatment for which they are not required to pay. The patients face no State interference with their rights, constitutional or otherwise. Thus, we conclude that KMC is not entitled to claim the benefit of the due process protections afforded to applicants or recipients as set forth in *Goldberg*.

KMC also argues that *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.*, 280 F.3d 278 (3d. Cir. 2002), supports its third-party standing argument. In that case, the plaintiff, Pennsylvania Psychiatric Society, brought suit, advancing claims under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, and advancing claims on behalf of patients, asserting that the defendants "fraudulently misrepresented the quality of care their plans would provide to subscribers" and "made false representations to their subscribers in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Const. Stat. Ann. § 201-1 *et seq.* (West 2001)." *Id* at 282. The district court dismissed the action, finding that the Society lacked standing to assert patients' claims. *Id.* As the dismissal was pursuant to F.R.C.P. 12(b)(6), the appellate court was required to "accept as true all material allegations of the complaint and draw all reasonable inferences in a light most favorable to plaintiff," *id.* at 283, specifically including the allegation that the defendants prevented the plaintiff's patients from receiving necessary mental health services. *Id*. at 289. We do not find KMC's reliance on this case to be persuasive, as the record before this Court

demonstrates that the patients received necessary mental health services. Therefore, we conclude that KMC has not demonstrated that it is entitled to rely on third party standing to claim the due process protections outlined in *Goldberg* afforded to applicants and recipients by 42 C.F.R. § 431.205(d), including the right to present evidence and confront adverse witnesses.

**2. KMC does not assert due process rights other than those provided by 42 C.F.R. § 431.205(d ).**

The Department argues that the findings and conclusions of the peer review psychiatrist were properly admissible under the hearsay rules governing administrative hearings and federal regulations prevent the disclosure of the identity of the peer review psychiatrist, making it impossible for KMC to cross-examine the peer review psychiatrist. KMC only argues that these procedures violate its due process rights under *Goldberg*, and that if the Department cannot disclose the identity of the peer review psychiatrist, its only choice is to not present the views of the peer review psychiatrist at hearing. KMC's arguments are not persuasive.

An administrative hearing is an informal hearing, and "technical rules of evidence" do not apply. IDAPA 16.05.03.134. Hearsay evidence is admissible in an administrative hearing so long as it is the kind of evidence commonly relied upon by prudent persons in the conduct of their affairs, or is otherwise corroborated by competent evidence in the record. I.C. § 67-5251(1); IDAPA 16.05.03.134. The Department argues that the peer review psychiatrist's findings and conclusions are corroborated by the Department's medical witness, Dr. Lehman. Dr. Lehman testified to the peer review psychiatrist's credentials, found that the reviewer examined the entire records, and identified those portions of the medical records that supported the reviewer's findings and conclusions. Given that KMC does not provide argument against the admissibility of this hearsay evidence, other than its argument based upon its claim of third-party standing, we conclude that the hearing officer properly admitted the peer review psychiatrist's findings and conclusions.

The Department also argues that KMC is not entitled to cross-examine the peer review psychiatrist because federal regulations protect the identities of peer reviewers from disclosure without written consent of the psychiatrist. Code of Federal Regulation, 42 § 480.133(a)(2)(iii) provides in relevant part that: "A QIO may disclose to any person, agency, or organization information on a particular practitioner or reviewer at the written request of or with the written consent of that practitioner or reviewer." The peer review psychiatrist has not provided such

10

written request or consent in the instant cases. Additionally, a QIO may not disclose its deliberations, either in written form or through oral testimony, in connection with the administrative hearing or review of a beneficiary's claim. 42 C.F.R. § 480.139(a)(2). A QIO must disclose, if requested through an administrative hearing or review of a beneficiary's claim, the reasons for its decision. 42 C.F.R. § 480.139(b)(2). However, "[t]he QIO must insure [sic] that the opinions or judgements of a particular individual or practitioner cannot be identified through the materials that are disclosed." *Id*. KMC only argues that the Department cannot offer the findings and conclusions of the peer review psychiatrist at hearing if the psychiatrist does not consent to release his or her identity. KMC's argument is unpersuasive and lacks citation to authority. A party waives an issue cited on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Therefore, we decline to address KMC's argument.

**B. The district court erred when it concluded that IDAPA 16.03.09.079.05 conflicts with 42 C.F.R. § 441.152.**

KMC argues that IDAPA 16.03.09.079.05 conflicts with 42 C.F.R. § 441.152. Certification of need for services is mandated by 42 C.F.R. § 441.152. Pursuant to that rule, a hospital's treatment team is required to "certify that . . . (1) Ambulatory care resources available in the community do not meet the treatment needs of the recipient; (2) Proper treatment . . . requires services on an inpatient basis . . . ; [and] (3) The services can reasonably be expected" to help the recipient. States that do not comply with the certification requirement may lose federal funding. *Psychiatric Healthcare Corp. of Missouri v. Dept. of Soc. Services*, 100 S.W. 3d 891, 905 (Mo. App. 2003). To comply with that federal mandate, the Department has adopted a regulation requiring that hospitals provide "[d]ocumentation sufficient to demonstrate the medical necessity criteria is still met" when a hospital seeks to justify the length of stay for inpatient psychiatric services for individuals under age 21. IDAPA 16.03.09.079.05. In the instant cases, KMC argues that the certification requirement in the federal regulation preempts the documentation requirement in the Idaho regulation. This argument is not persuasive.

In *Psychiatric Healthcare Corp.*, the state of Missouri adopted an administrative regulation requiring that hospitals include a certificate of need form in a patient's medical record, which complied with the certification requirement in 42 C.F.R. § 441.152, or the hospital would forfeit all payment for medically necessary care. 100 S.W.3d at 904. The hospital argued that adopting such a regulation is an abuse of the State's authority to adopt reasonable rules and

regulations. *Id.* The court held that the Missouri regulation, requiring documentation of certification in the patient's medical record, served a legitimate state interest because it helped keep Missouri in compliance with the federal regulations so as to help ensure continued federal participation in funding. *Id.* at 905. Therefore, the regulation was not arbitrary, capricious, or unreasonable.

Similarly, the Idaho regulation requires that a hospital provide documentary evidence in the medical record that a patient's treatment was medically necessary. This documentation requirement is consistent with the requirement in 42 C.F.R. § 441.152 that a treatment team certify that "proper treatment . . . requires services on an inpatient basis." Like the Missouri regulation in *Psychiatric Healthcare Corp.*, the Idaho regulation ensures compliance with the federal regulation. Furthermore, 42 C.F.R. § 480.102(c) requires "health care practitioners and providers to maintain evidence of the medical necessity and quality of health care services they provide to Medicare patients as required by QIOs." We conclude that the documentation requirement in IDAPA 16.03.09.079.05 is consistent with federal regulations and statutes.[2]

**C. The Department properly denied KMC reimbursement for psychiatric care that was not medically necessary in the instant cases.**

The Department denied KMC reimbursement for psychiatric care that it determined was not medically necessary in each of the instant cases. Pursuant to IDAPA 16.03.09.079, the Department will pay for medically necessary inpatient psychiatric hospital services for recipients under the age of 21. "Reimbursement for the recipient's admission and length of stay is subject to . . . retrospective review by the Department or its designee. . . . If such review identifies that an admission or continued stay is not medically necessary, then no Medicaid payment will be made." IDAPA 16.03.09.079.08.

Under the applicable regulations, medical necessity is judged by severity of illness and intensity of services criteria:

> **Medical Necessity Criteria**. Both severity of illness and intensity of services criteria must be met for admission to an IMD or psychiatric unit of a general hospital.

---

[2]    Further, even if IDAPA 16.03.09.079.05 did conflict with 42 C.F.R. § 441.152, KMC does not argue that the regulation impacts a substantial right. Indeed, it seems counterintuitive that KMC would have a substantial right to decline to offer documentary evidence of medical necessity. Such a policy would serve to undermine the federal government's legitimate interest in combating Medicaid fraud.

a. Severity of illness criteria. The child must meet one (1) of the following criteria related to the severity of his psychiatric illness:

    i. Is currently dangerous to self as indicated by at least one (1) of the following:

        (1) Has actually made an attempt to take his own life in the last seventy-two (72) hours (details of the attempt must be documented); or

        (2) Has demonstrated self-mutilative behavior within the past seventy-two (72) hours (details of the behavior must be documented); or

        (3) Has a clear plan to seriously harm himself, overt suicidal intent, and lethal means available to follow the plan (this information can be from the child or a reliable source and details of the child's plan must be documented); or

        (4) A mental health professional has information from the child or a reliable source that the child has a current plan, specific intent, or recurrent thoughts to seriously harm himself and is at significant risk to making an attempt to carry out the plan without immediate intervention (details must be documented); or

    ii. Child is actively violent or aggressive and exhibits homicidal ideation or other symptoms which indicate he is a probable danger to others as indicated by one (1) of the following:

        (1) The child has actually engaged in behavior harmful or potentially harmful to others or caused serious damage to property which would pose a serious threat of injury or harm to others within the last twenty-four (24) hours (description of the behavior and extent of injury or damage must be documented, as well as the time the behavior occurred relative to the present); or

        (2) The child has made threats to kill or seriously injure others or to cause serious damage to property which would pose a threat of injury or harm to others and has effective means to carry out the threats (details of threats must be documented); or

        (3) A mental health professional has information from the child or a reliable source that the child has a current plan, specific intent, or recurrent thoughts to seriously harm others or property and is at significant risk of making the attempt without immediate intervention (details must be documented); or

iii. Child is gravely impaired as indicated by at least one (1) of the following criteria:

(1) The child has such limited functioning that his physical safety and well being are in jeopardy due to his inability for basic self-care, judgment and decision making (details of the functional limitations must be documented); or

(2) The acute onset of psychosis or severe thought disorganization or clinical deterioration has rendered the child unmanageable and unable to cooperate in non-hospital treatment (details of the child's behaviors must be documented); or

(3) There is a need for treatment, evaluation or complex diagnostic testing where the child's level of functioning or communication precludes assessment and/or treatment in a non-hospital based setting, and may require close supervision of medication and/or behavior.

b. Intensity of service criteria. The child must meet all of the following criteria related to the intensity of services needed to treat his mental illness:

i. It is documented by the Regional Mental Health Authority that less restrictive services in the community do not exist or do not meet the treatment or diagnostic needs of the child, or the child has been unresponsive to treatment at a less intensive level of care. The services considered, tried, and/or needed must be documented; and

ii. The services provided in the hospital can reasonably be expected to improve the child's condition or prevent further regression so that inpatient services will no longer be needed; and

iii. Treatment of the child's psychiatric condition requires services on an inpatient basis, including twenty-four (24) hour nursing observation, under the direction of a psychiatrist. The child requiring this treatment must not be eligible for independent passes or unit passes without observation or being accompanied by hospital personnel or a responsible other.

IDAPA 16.03.09.079.01.

The Department also regulates the length of stay for which it will reimburse a provider:

**Length of Stay**. An initial length of stay will be established by the Department or its designee. An initial length of stay will usually be for no longer than five (5) days. For first time admissions where intensity of services criteria is not met the initial length of stay may not exceed forty-eight (48) hours. A hospital may request a continued stay review from the Department or its designee when the appropriate care of the recipient indicates the need for hospital days in excess

14

of the originally approved number. The continued stay review request may be made no later than the date authorized by the Department or its designee. Approval of additional days will be based on the following criteria:

   a. Documentation sufficient to demonstrate the medical necessity criteria is still met; and

   b. A plan of care that includes documentation sufficient to demonstrate that the child's psychiatric condition continues to require services which can only be provided on an in-patient basis, including twenty-four (24) hour nursing observation, under the direction of a psychiatrist or other physician qualified to treat mental disease; and

   c. Documentation sufficient to demonstrate the need for continued hospitalization, and that additional days at in-patient level of care will improve the recipient's condition.

IDAPA 16.03.09.079.05. We examine each case in turn to determine if there is substantial and competent evidence in the record supporting the Department's conclusion regarding medical necessity.

### 1. The Department properly denied KMC reimbursement for psychiatric care that was not medically necessary in the case of J.M.

J.M. was treated at NIBH from August 20, 2005, through August 31, 2005. Qualis approved reimbursement for the period of August 20, 2005 through August 24, 2005, but denied reimbursement for the period of August 25, 2005 through August 31, 2005. On appeal, the Department concluded that KMC did not establish by a preponderance of the evidence that the medical chart sufficiently documented the medical necessity of inpatient psychiatric care. KMC argues that there is substantial evidence in the record supporting reimbursement for the entire length of J.M's stay at NIBH. KMC's argument is not persuasive.

There is substantial and competent evidence in the record demonstrating that after August 25, 2005, J.M. did not meet the length of stay criteria because the record lacked documentation sufficient to demonstrate the medical necessity criteria. The hearing officer concluded that the medical record indicated that J.M. was not suffering any suicidal or homicidal ideation after August 22, 2005 and denied KMC reimbursement for the days of August 25 and 26, 2005. The notes of the treating physician, Dr. Miewald, who testified for KMC before the hearing officer, support the hearing officer's conclusion. Dr. Miewald's notes indicate that J.M. denied any urges to harm himself or others after August 22, 2005. Without expressing any urges to harm

15

himself or others, J.M did not meet the severity of illness criteria incorporated into the length of stay analysis.

While noting that J.M. lacked suicidal or homicidal ideation after August 22, 2005, the hearing officer also found that KMC should be denied reimbursement for the period from August 27 through August 31, 2005, because KMC gave J.M. a supervised four-hour pass, which therefore demonstrated that J.M. did not require acute inpatient care. Although not necessary to our determination, this decision was in error. Pursuant to IDAPA 16.03.09.079.01.b.iii, treatment of a child's psychiatric condition "requires services on an inpatient basis, including twenty-four (24) hour nursing observation, under the direction of a psychiatrist. The child requiring this treatment must not be eligible for *independent passes or unit passes without observation or being accompanied by hospital personnel or a responsible other*." (emphasis added). Dr. Miewald's notes indicate that J.M. was accompanied on his pass by his mother. Therefore, this was an inappropriate basis for denying medical reimbursement because J.M. was not ineligible for medically necessary care upon receiving a *supervised* pass.

However, there is sufficient information in the record to affirm the hearing officer's decision to deny KMC reimbursement for the dates of August 27 through August 31, 2005, on alternate grounds; the same grounds the hearing officer relied upon to deny KMC reimbursement for the days of August 25 and August 26, 2005. As noted above, J.M. lacked suicidal and homicidal ideation after August 22, 2005 and thus did not meet the severity of illness criteria incorporated into the length of stay analysis. We therefore reverse the district court's reimbursement decision regarding J.M.

### 2. The Department properly denied KMC reimbursement for psychiatric care that was not medically necessary in the case of J.G.

J.G. was treated at NIBH from December 23, 2005 through January 4, 2006. Qualis approved reimbursement for the period of December 23, 2005 through December 28, 2005, but denied reimbursement for the period of December 29, 2005 through January 4, 2006. On appeal, the hearing officer concluded that KMC did not establish by a preponderance of the evidence that J.G.'s medical chart sufficiently documented the medical necessity of inpatient psychiatric care. The Department argues that J.G. did not meet the severity of illness criteria after December 28, 2005, because J.G. did not evidence a specific intent to harm herself. KMC argues that J.G.'s medical records indicate that she planned to harm herself. KMC's argument is not persuasive.

As in the case of J.M., the Department approved an initial length of stay of five days and the parties disagree whether the patient met the criteria for a continued length of stay. Approval for reimbursement beyond the initial length of stay requires documentation sufficient to demonstrate the medical necessity criteria are still met. KMC argues that J.G.'s case fulfilled the severity of illness criteria because J.G. was dangerous to herself during her stay at NIBH as evidenced by her thoughts of harming herself. In order to meet the severity of illness criteria, a patient must be considered a danger to harming one's self, and the record must include evidence of a clear plan of harming one's self, overt suicidal intent, and lethal means available to follow the plan. IDAPA 16.03.09.079.01.a.i.3. Details of the patient's plan must be documented. *Id.*

KMC is correct that the record indicates that J.G. entertained thoughts of harming herself after December 28, 2005. J.G.'s treating physician, Dr. Sandra Nelson documented instances when J.G. entertained thoughts of harming herself or wished that she was not alive on December 29, 30, and 31, 2005, and January 2, 2006. However, Dr. Nelson's notes on December 31, 2005 and January 2, 2006, state that J.G. has no current intent or plan for acting on her suicidal thoughts. The record does not document evidence that J.G. had a clear plan to harm herself or that she had the lethal means available to follow her plan. As J.G.'s medical records do not demonstrate that J.G. met the severity of illness criteria for a continued length of stay prescribed by IDAPA 16.03.09.079.01.a.i.3, we are unable to find error in the Department's decision to deny reimbursement. Therefore, we reverse the district court's reimbursement decision regarding J.G.

### 3. The Department properly denied KMC reimbursement for psychiatric care that was not medically necessary in the case of T.K.

T.K. was treated at NIBH from November 6, 2005 through December 14, 2005. Qualis approved reimbursement for the period of November 6, 2005 through November 8, 2005, but denied reimbursement for the period of November 9, 2005 through December 14, 2005. Subsequently, the Department reimbursed KMC for the period of November 19, 2005 through December 12, 2005, through a non-Medicaid fund. KMC requested reconsideration of Qualis's reimbursement decision, and on February 21, 2006, Qualis upheld its initial decision. On appeal, the hearing officer found that the medical record did not justify inpatient hospitalization after November 9, 2005 because the medical chart did not demonstrate that T.K. met the medical necessity criteria. KMC argues that the medical record justifies reimbursement beyond the initial length of stay the Department approved in T.K.'s case. We disagree.

In order to justify reimbursement beyond an initial length of stay, a recipient must meet three criteria: (1) documentation that the medical necessity criteria are still met; (2) documentation that the recipient's psychiatric condition continues to require services that can only be provided on an inpatient basis; and (3) documentation of the need for continued hospitalization and that additional days of inpatient care will improve the recipient's condition. IDAPA 16.03.09.079.05.

As previously noted, the medical necessity criteria contain two primary components: the severity of illness criteria and the intensity of service criteria. IDAPA 16.03.09.079.01. Under the severity of illness criteria, there are three broad categories, one of which a recipient must meet, including that the patient is gravely impaired. The Department concluded that the medical record did not document that T.K. was gravely impaired. As to the third criterion considered in the length of stay analysis, i.e., documentation sufficient to demonstrate the need for continued hospitalization, the Department concluded that the record did not contain documentation of the need for treatment, evaluation, or complex diagnostic testing.

KMC argues, relying primarily on nursing notes in the medical chart, that the record contains documentation that T.K. was gravely disabled and required inpatient hospital care. We acknowledge that the nursing notes in the medical record indicate that, for the majority of T.K.'s stay at NIBH, she was non-communicative, unwilling to engage staff with eye contact or conversation, had difficulty answering questions, and had trouble maintaining basic hygiene and social interaction. However, we need not conclude whether the Department erred when it concluded that the medical record did not document that T.K. was gravely impaired.

Rather, we conclude that the medical record does not contain documentation sufficient to demonstrate the need for continued hospitalization and documentation that additional days of inpatient care would improve T.K.'s condition. KMC argues that the nursing notes indicate that T.K. suffered from hallucinations while at NIBH, and therefore, the record documents the need for continued hospitalization. However, KMC does not provide any argument that the medical record contains documentation that additional days of inpatient care would improve T.K.'s condition. This is a requisite criterion to justify reimbursement beyond an initial length of stay under IDAPA 16.03.09.079.05. One would expect to find documentation to satisfy this criterion in the psychiatric update notes of T.K.'s treating psychiatrists while at NIBH. However, the psychiatric update notes in the record are sparse at best and do not document that additional days

18

of inpatient care would improve T.K.'s condition.   Therefore, we reverse the district court's reimbursement decision regarding T.K.

**D.  Neither party is entitled to an award of attorney fees and costs on appeal.**

Each party has requested an award of attorney fees on appeal pursuant to I.C. § 12-117. KMC is not the prevailing party in this appeal.   Consequently, it is not entitled to an award of attorney fees.  *Giltner, Inc. v. Idaho Dep't of Commerce and Labor*, 145 Idaho 415, 421, 179 P.3d  1071, 1077 (2008) (citing *Mercy Med. Ctr. v. Ada Co.*, 143 Idaho 899, 903, 155 P.3d 700, 704 (2007)).   As to the Department's request, the primary questions presented by this appeal are whether the retrospective review process denied KMC its due process rights and whether IDAPA 16.03.09.079.05 conflicts with 42 C.F.R. § 441.152.   These issues have not been previously addressed by an Idaho appellate court, and therefore involve matters of first impression.   In *Wheeler v. Idaho Dept. of Health and Welfare*, ___ Idaho ___, ___, 207 P.3d 988, 997-98 (2009), this Court declined to award attorney fees under I.C. § 12-117 when a case involves issues of first impression. (citing *In re Ferdig*, 146 Idaho 862, 863, 204 P.3d 502, 503 (2009)). Therefore, we decline to award the Department attorney fees on appeal.

## IV. CONCLUSION

We reverse the decision of the district court and affirm the Department's reimbursement decisions.  We award costs to the Department, but decline to award attorney fees on appeal.

Chief Justice EISMANN and Justices BURDICK, J. JONES and W. JONES **CONCUR**.

19