**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 35534**

| | |
|---|---|
| JAMES R. MEYERS and ANN T. MEYERS, husband and wife, | Twin Falls, November 2009 Term |
| | 2009 Opinion No. 142 |
| Plaintiffs/Respondents, | |
| v. | Filed: November 27, 2009 |
| | |
| GEORGE HANSEN, | Stephen W. Kenyon, Clerk |
| | |
| Defendants/Appellant. | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Hon. Darren B. Simpson, District Judge.

The decision of the district court is *affirmed.* Respondent is awarded costs and fees on appeal.

Runft & Steele, LLP, Boise, for appellant. John Runft argued.

Beard St. Clair Gaffney, PA, Idaho Falls, for respondent. Julie Stomper argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

George Hansen appeals from the denial of his Motion for Relief from Default Judgment. Ann T. Meyers, the respondent, obtained a default in an action against Hansen for securities fraud in 1993. Meyers filed for default judgment several years later in 2001. Hansen asserts that he did not learn of the Default Judgment entered against him until long after the district court entered an Order of Renewed Default Judgment in 2006. He contends that the default judgment should be vacated because it was entered in violation of his procedural due process rights and his rights to notice under the Idaho Rules of Civil Procedure. He also argues that it would be inequitable for the Default Judgment to have prospective effect.

1

## II. FACTUAL AND PROCEDURAL BACKGROUND

The respondents, Ann T. Meyers and her late husband, James Meyers, lost nearly $300,000 in an investment scheme orchestrated by the appellant, George Hansen. George Hansen is a former U.S. congressman from Idaho.

On February 22, 1993, Meyers filed an action against Hansen as well as Jack and Kathleen Lott, co-investors who had allegedly violated securities regulations by inducing Meyers into making the investment.[1] Hansen was personally served on August 23, 1993, while serving a federal prison sentence for securities fraud in Petersburg, Virginia, but did not answer or otherwise enter an appearance. Hansen claims he does not remember receiving the personal service. The following month, the district court entered an Order of Entry of Default against Hansen, which was served on September 21, 1993. Hansen was released from prison in 1995.

After a trial in September of 2000, the jury found in favor of the Lotts, leaving Hansen as the sole defendant. The Judgment on Jury Verdict stated that Meyers's complaint was dismissed with prejudice. A year later, Meyers filed an Application for Default Judgment against Hansen that did not contain his certified address and for which no notice was provided. Default judgment was granted on September 25, 2001, without service, and an Order for Renewed Default Judgment was granted on May 16, 2006, again without service. Both orders provide that interest shall continue to accrue at the statutory rate.[2] Meyers then initiated collection proceedings. The Order for Examination of Debtor was personally served upon Hansen's wife at their home in Pocatello, Idaho, on September 12, 2006. Hansen resisted the collection proceedings by immediately filing two *pro se* Requests for Excuse from Attending Debtor's Exam on September 20, 2006, and October 31, 2006.[3]

Despite receiving service of the Order for Examination of Debtor in 2006 and despite filing *pro se* motions to resist the Debtor's Exam in late 2006, Hansen claims that he did not know of the Default Judgment until April of 2007. Hansen obtained counsel in early 2007, and on February 25, 2008, filed a Motion for Relief from Default Judgment pursuant to I.R.C.P. 55(c), which was denied. He appeals the denial of his motion, claiming that the Default Judgment is void under I.R.C.P. 60(b)(4) because entering the default judgment without notice

---

[1] The suit also stated a claim against John Scoresby, alleged to have assisted Hansen in running the scheme. Scoresby was dismissed from the suit in 1997.

[2] The 2001 Default Judgment awarded Meyers $299,350.00, along with $433,577.00 prejudgment interest, for a total judgment amount of $732,927.00.

[3] Copies of these requests do not appear in the record on appeal.

2

violates his constitutional rights to procedural due process as well as his statutory rights to notice under I.R.C.P. 55(b)(2). He also contends that, under I.R.C.P. 60(b)(5), it would be inequitable for the default judgment to have prospective effect. Last, he argues that the default judgment should be vacated because the district court's Judgment on Jury Verdict dismissed Meyers's "complaint with prejudice," implicitly dismissing her claims against Hansen as well.

### III. ISSUES ON APPEAL

**1.** Whether the default judgment is void under I.R.C.P. 60(b)(4) for having been filed without notice as required by I.R.C.P. 55(b)(2).

**2.** Whether it is inequitable under I.R.C.P. 60(b)(5) for the default judgment to have prospective effect.

**3.** Whether it was a violation of procedural due process not to serve Hansen with notice of the default judgment, rendering it void under I.R.C.P. 60(b)(4).

**4.** Whether the Order on Jury Verdict in the trial of Hansen's co-defendants, the Lotts, dismisses the claims against Hansen because it stated that it dismissed Meyers's "complaint with prejudice."

**5.** Whether Meyers is entitled to an award of attorney fees on appeal.

### IV. STANDARD OF REVIEW

This Court reviews a denial of a motion to grant relief under I.R.C.P. 55(c) and 60(b) for abuse of discretion. *Clear Springs Trout Co. v. Anthony*, 123 Idaho 141, 143, 845 P.2d 559, 561 (1992). "Where the trial court makes factual findings that are not clearly erroneous, applies correct criteria pursuant to I.R.C.P. 55(c) to those facts, and makes a logical conclusion, the court will have acted within its discretion." *McGloon v. Glynn*, 140 Idaho 727, 729, 100 P.3d 621, 623 (2004) (citation omitted). "Because judgments by default are not favored, a trial court should grant relief in doubtful cases in order to decide the case on the merits." *Jonsson v. Oxborrow*, 141 Idaho 635, 638, 115 P.3d 726, 729 (2005).

"Due process issues are generally questions of law, and this Court exercises free review over questions of law." *Kootenai Medical Ctr. v. Idaho Dep't of Health and Welfare*, 147 Idaho 872, ---, 216 P.3d 630, 634 (2009).


### V. ANALYSIS

**A. The District Court Did Not Abuse its Discretion in Upholding the Default Judgment Despite It Being Filed Without Notice Under I.R.C.P. 55(b)(2)**

Hansen asserts that he did not receive the notice of the default judgment required by I.R.C.P. 55(b)(2), which entitles parties that have entered an appearance to receive three-day

notice. He contends that the default judgment is therefore void under I.R.C.P. 60(b)(4) and the court was therefore without discretion to deny him relief.

1. *Hansen Was Not Entitled to the Three-Day Notice Because He Had Not Appeared in the Case*

Under Rule 60(b)(4), "the court may relieve a party . . . from a final judgment, order, or proceeding [if] . . . the judgment is void." I.R.C.P. 60(b). When a party has entered an appearance, that party must receive notice of an application for default judgment at least three days in advance of the hearing. I.R.C.P. 55(b)(2).[4] Hansen argues that he appeared in this case in 1997 when he attended a deposition as a witness called by Meyers's attorney to prosecute her claims against Hansen's co-defendants, the Lotts. Because Hansen claims he did not know during the deposition that he was a party to the suit, he argues that he did not have a chance to exhibit his intent to defend the lawsuit and was therefore entitled to notice of Meyers's application for default judgment. There is no dispute here that Hansen did not receive the three-day notice—the issue is whether he entered an appearance entitling him to the notice in the first place.

Preliminarily, Hansen is incorrect when he argues that a failure to deliver three-day notice renders a judgment void, rather than merely voidable. The district court generally has discretion whether to vacate a default judgment under I.R.C.P. 55(c). *Hearst Corp. v. Keller*, 100 Idaho 10, 11, 592 P.2d 66, 67 (1979) *abrogated on other grounds by Shelton v. Diamond Int'l Corp.*, 108 Idaho 935, 703 P.2d 699 (1985); *Omega Alpha House Corp. v. Molander Assoc.*, 102 Idaho 361, 362, 630 P.2d 153, 154 (1981). Specifically, "[a] default judgment entered without the requisite three day notice is *voidable* as it has been irregularly obtained." *Radioear Corp. v. Crouse*, 97 Idaho 501, 503, 547 P.2d 546, 548 (1976) (emphasis added) *abrogated on other grounds by Shelton*, 108 Idaho 935, 703 P.2d 699; *see also Farber v. Howell*, 105 Idaho 57, 59, 665 P.2d 1067, 1069 (1983) (stating that a default judgment entered without three day's notice is voidable).

The purpose of requiring notice only when the defendant has entered an appearance is to protect plaintiffs in instances "when the adversary process has been halted because of an essentially unresponsive party." *Newbold v. Arvidson*, 105 Idaho 663, 665, 672 P.2d 231, 233

---

[4] The pertinent part of I.R.C.P. 55(b)(2) reads:

> If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three (3) days prior to the hearing on such application.

(1983) (citation omitted). The law imposes an obligation on defendants to seek counsel and does not permit willful ignorance of the proceedings. *Id.* Even so, "the appearance required to trigger the three-day notice requirement has been broadly defined, and is not limited to a formal court appearance." *Id.* A defendant who merely "indicates an intent to defend against the action" can benefit from the notice requirement. *Catledge v. Transport Tire Co.*, 107 Idaho 602, 606, 691 P.2d 1217, 1221 (1984). To amount to an appearance, the defendant's actions "must be responsive to plaintiff's formal [c]ourt action," so it is insufficient to simply be interested in the dispute or to communicate to the plaintiff an unwillingness to comply with the requested relief. *Baez v. S. S. Kresge Co.*, 518 F.2d 349, 350 (5th Cir. 1975) (per curiam) (holding that there has not been an appearance merely because the plaintiff knew the defendant intended to resist the suit); *see also Ellis v. Ellis*, 118 Idaho 468, 472, 797 P.2d 868, 872 (Ct. App. 1990) (finding that the defendant had not appeared when he rejected the petitioner's divorce settlement proposal); *Olson v. Kirkham*, 111 Idaho 34, 36, 720 P.2d 217, 219 (Ct. App. 1986) (finding that preliminary settlement discussions between the parties were not an appearance).

Testifying as a witness at a deposition is not an "appearance" that triggers the notice requirement. Such a holding would square with this Court's previous ruling in *Newbold v. Arvidson*, 105 Idaho 663, 672 P.2d 231 (1983). In *Newbold*, this Court found that the defendant had made an appearance by representing himself *pro se* at the deposition of a witness. *Id.* at 665–66, 672 P.2d at 233–34. However, as the Idaho Court of Appeals has acknowledged, *Newbold* probably marks the outer bounds of activity that can be considered an appearance. *See Olson*, 111 Idaho at 36, 720 P.2d at 219 (stating that *Newbold* created a "narrow exception" to the requirement of making a "formal court appearance"); *see also Marano v. Dial*, 108 Idaho 680, 682, 701 P.2d 300, 302 (Ct. App. 1985) ("[W]e believe that the key event in *Newbold* was [the defendant's] attendance at a deposition . . . ."). The defendant in *Newbold* appeared *pro se* as a litigant to defend a witness deposition, placing himself on the record before the court as resisting the lawsuit. To the contrary, in this case, Hansen did not make an affirmative effort to appear as a litigant but was subpoenaed as a witness. Hansen claimed he was not even aware that he was still a party to the suit despite the fact that he had been personally served with process and notice of the Entry of Default.[5] Hansen also did not seem to be willing to resist his lenders' attempts to recoup their investments, admitting during the deposition that he would

---

[5] Hansen contends that he does not remember receiving process, but an affidavit of service regarding process and a certification of notice regarding the Entry of Default both exist in the record.

repay them if he could. Whether Meyers's attorney could have informed Hansen that he was still a party is immaterial—the law places a minimal duty on defendants to secure counsel or otherwise respond to a suit, something that Hansen did not do until nearly a year and a half after he received notice of the debtor's exam. *Newbold*, 105 Idaho at 665, 672 P.2d at 233. For that reason, the district court correctly denied Hansen's challenge to the default judgment under Rule 60(b)(4).

>    2.    *Hansen Cannot Demonstrate a Meritorious Defense that Would Justify Setting Aside the Default Judgment*

Even if the default judgment were voidable under Rule 60(b)(4), Hansen has failed to set forth any facts amounting to a meritorious defense:

> When moving to set aside a default judgment, the moving party must not only meet the requirements of I.R.C.P. 60(b) but must also plead facts which, if established, would constitute a defense to the action. It would be an idle exercise for the court to set aside a default if there is in fact no real justiciable controversy. The defense matters must be detailed.

*Idaho State Police v. Real Property*, 144 Idaho 60, 62–63, 156 P.3d 561, 563–64 (2007) (citing *Hearst*, 100 Idaho at 12, 592 P.2d at 68). Hansen nowhere attempts to plead any facts that might indicate a meritorious defense. Accordingly, Hansen is not entitled to relief from the default judgment under Rule 60(b)(4).

**B.    The District Court Was Within its Discretion in Dismissing Hansen's Claim that the Default Judgment Should Not Have Prospective Effect Under I.R.C.P. 60(b)(5)**

A party may also be relieved from a judgment under Rule 60(b)(5) if "it is no longer equitable that the judgment should have prospective application." I.R.C.P. 60(b). "To rely on Rule 60(b)(5), a movant must show two things: (1) that the judgment is prospective in nature; and (2) that it is no longer equitable to enforce the judgment as written." *Rudd v. Rudd*, 105 Idaho 112, 118, 666 P.2d 639, 645 (1983). In addition, the motion for relief must be made "within a reasonable time." I.R.C.P. 60(b). Hansen argues that he made a timely motion to vacate the default judgment, and that under I.R.C.P. 60(b)(5), the default judgment is a prospective judgment that is no longer equitable to enforce against him due to Meyers's laches in pursuing her claims.

>    1.    *The Default Judgment Order Is Not a Prospective Judgment*

Hansen contends that the default judgment and the Renewed Default Judgment are wholly prospective and therefore can be modified under Rule 60(b)(5).

Since even ordinary money judgments can prospectively affect the litigants by reducing their available assets, the definition of a prospective judgment can be elusive and circular.[6] Although there is no definitive test under Idaho law, the U.S. Circuit Court for the District of Columbia defined the test under the analog federal rule as "whether [the judgment] is 'executory' or involves 'the supervision of changing conduct or conditions.'" *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1139 (D.C. Cir. 1988). The court relied on *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421, 431 (1856), and *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932). In *Wheeling*, the Court imposed an injunction against a bridge company, ordering an abatement for a bridge that violated federal height regulations governing crossings on the Ohio River. *Wheeling*, 59 U.S. at 429. When Congress modified the statute to accommodate the bridge, the Court held that the injunction could be lifted, reasoning that the injunction was "executory" because it was necessary depending on whether the bridge violated federal height regulations. *Id.* at 432. Similarly, in *Swift*, Justice Cardozo wrote for the majority that the court could modify an anti-monopoly consent decree to adapt to changing market conditions. *Swift*, 286 U.S. at 112–14. He reasoned that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* at 114. In other words, any component of the order is a "prospective judgment," and can be modified under Rule 60(b)(5), if it is susceptible to the legal or equitable rights of the parties as they evolve due to changes in law or circumstance.

In this case, therefore, the compensatory damage award against Hansen is not a prospective judgment. "Compensatory damages are defined as damages that will 'compensate the injured party for the injury sustained, and nothing more.'" *Curtis v. Firth*, 123 Idaho 598, 609, 850 P.2d 749, 760 (1993) (citing *Blacks Law Dictionary* 352 (5th ed. 1983)). Since damages are only a remedy for past harm, they represent the net present debt between the parties at the time of judgment and cannot be modified under Rule 60(b)(5). *DeWeerth v. Baldinger*, 38 F.3d 1266, 1275 (2nd Cir. 1994); *see also Wheeling*, 59 U.S. at 431 (1856) (finding that the Court could not modify a previous assessment of costs). If Hansen had a defense to the action, he could have raised it when he received the original complaint and summons. Similarly, post-

---

[6] For example, in articulating what a "prospective judgment" is, this Court has previously stated, "It is not absolutely necessary that the decree sought to be changed be an injunction; it is only necessary that the judgment have prospective application." *Rudd*, 105 Idaho at 118, 666 P.2d at 645; *see also Curl v. Curl*, 115 Idaho 997, 1002, 772 P.2d 204, 209 (1989) (noting that a divorce decree was not prospective because it had "adjudicated all the rights as between the parties as of the date of the judgment" (quotation omitted)).

judgment interest is also not a prospective judgment, even though it has the prospective effect of increasing the amount of the judgment. Post-judgment interest accrues regardless of later changes in the law or the parties' circumstances because it is only designed to compensate the plaintiff for not having control of the money he or she was rightfully owed at the time of judgment. *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 834 (1990). It is simply an effect of a statute, not a part of the judgment itself. *See* I.C. § 28-22-104(2) (defining the legal interest rate on judgments). The entire judgment against Hansen is therefore not a prospective judgment and is not modifiable under Rule 60(b)(5).

2.       *The Rule 60(b)(5) Motion Was Not Timely*

Regardless of whether the default judgment is wholly prospective, the district court was within its discretion in denying Hansen's motion for relief from the default judgment because it was untimely. A party challenging a default judgment under I.R.C.P. 60(b)(5) must do so "within a reasonable time." I.R.C.P. 60(b). Whether a motion under Rule 60(b) is timely is an issue of fact for the district court. *Davis v. Parrish*, 131 Idaho 595, 597, 961 P.2d 1198, 1200 (1998). The district court's determination is subject to clear-error review. *Shelton*, 108 Idaho at 937, 703 P.2d at 701. When the movant challenges a judgment as void under Rule 60(b), the court examines the length of time between the moment the judgment becomes apparent to the defendant and the date the Rule 60(b) motion is filed. *McGrew v. McGrew*, 139 Idaho 551, 559, 82 P.3d 883, 891 (2003). Thus, when the movant alleges that a judgment has become inequitable under Rule 60(b)(5), the court should examine the movant's delay after the moment it became reasonably apparent that the order is inequitable due to a change in law or circumstances.

Again, the judgment in this case is at best voidable, not void. Hansen received notice of the default judgment at the latest when the Order for Examination of Debtor was personally served upon his home on September 12, 2006. There is no reason why Hansen could not have reasonably ascertained the nature and extent of the default judgment against him when he received notice of the debtor's exam in September of 2006. Hansen did not move to set aside the default judgment until February 27, 2008, nearly a year and a half later. In the intervening period, Hansen filed at least two requests to be excused from the debtor's exam but did not raise any objections to the default judgment itself.

Although Hansen concedes that he received notice of the default judgment in September of 2006, he argues that the inequity of the judgment did not become apparent until September of 2007, when "a period of post judgment depositions and discovery . . . established that [he] is

8

without substantial assets" to satisfy the judgment. Hansen's argument strangely assumes that he was unaware of his own assets until 2007. Moreover, there is no reason why the judgment would become inequitable simply because the judgment debtor cannot afford to pay it. Accordingly, given that Hansen waited over seventeen months to challenge the default judgment, it was not an abuse of discretion to deny his motion for relief. *See Viafax Corp. v. Stuckenbrock*, 134 Idaho 65, 71, 995 P.2d 835, 841 (Ct. App. 2000) (finding that an unexplained delay of less than five months was unreasonable under Rule 60(b)).

## C.     The Default Judgment Is Not a Violation of Hansen's Due Process Rights

Hansen argues that he suffered a cumulative due process violation because a default judgment was entered against him in 2001, without notice until 2006. He further contends that a motion under Rule 60(b)(4) regarding a void judgment can never be time-barred or subject to a laches defense.

Hansen correctly asserts that "void judgments can be attacked at any time." *Burns v. Baldwin*, 138 Idaho 480, 486, 65 P.3d 502, 508 (2003). Generally, the Court may declare a judgment void only for defects of personal jurisdiction or subject-matter jurisdiction. *Catledge v. Transp. Tire Co.*, 107 Idaho 602, 607, 691 P.2d 1217, 1222 (1984). However, a judgment is also void if the "court's action amounts to a plain usurpation of power constituting a violation of due process." *Dept. of Health and Welfare v. Housel*, 140 Idaho 96, 100, 90 P.3d 321, 325 (2004) (citation omitted). The issue therefore is whether Hansen's due process rights were invaded.

"Procedural due process requires that there must be some process to ensure that the individual is not arbitrarily deprived of his rights in violation of the state or federal constitutions." *Cowan v. Board of Comm'rs*, 143 Idaho 501, 510, 148 P.3d 1247, 1256 (2006). "[A]n individual must be provided with notice and an opportunity to be heard." *Spencer v. Kootenai County*, 145 Idaho 448, 454, 180 P.3d 487, 493 (2008). Due process is not a rigid concept. Instead, the protections and safeguards necessary vary according to the situation. *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 91, 982 P.2d 917, 926 (1999). The appellate court will evaluate the constitutionality of the proceedings as a whole. *Spencer*, 145 Idaho at 455, 180 P.3d at 495.

Hansen's procedural due process rights were not violated at any time before the court entered the default judgment against him. Hansen personally received his initial service of process and also a mailed notice of the Entry of Default but did nothing. Thus, Hansen had

9

received "notice and an opportunity to be heard," and the court could enter default judgment against him. *Id.* at 454, 180 P.3d at 493.

Additionally, a due-process violation did not occur even though Hansen received no notice of the 2001 default judgment until several years after it was entered. The party filing for default judgment is required under the Idaho Rules of Civil Procedure to provide the defendant's address so the clerk can notify him or her of the default judgment. I.R.C.P. 55(b)(1).[7] The apparent purpose of Rule 55(b)(1) is to inform defendants of the judgment against them so they can either promptly satisfy the judgment to avoid post-judgment interest or file a motion to resist the judgment. Meyers's motion for default judgment, which was filed on September 25, 2001, did not contain any address to which the clerk of court could send Hansen notice, nor is there evidence that the clerk mailed notice of the default judgment to him. There is no indication that Hansen otherwise received notice until nearly five years later, on September 12, 2006, when he learned of the collection proceedings. Hansen, however, suffered no prejudice. Under the Rules, "[l]ack of notice of entry of an order or judgment" does not permit the court to allow the defending party to file late post-trial motions, "except where there is no showing of mailing [of notice] by the clerk in the court records and the party affected thereby had no actual notice." I.R.C.P. 77(d). Again, a motion to void a default judgment must be made within a "reasonable time." I.R.C.P. 60(b). Thus, while Hansen was entitled to notice, he nevertheless had the opportunity to resist the default judgment. At the time he learned of the default judgment, Hansen had all the rights he would have had if he had learned of the judgment on the day it was entered. He instead chose not to react within a reasonable time, as described above. Accordingly, Hansen's due process rights were not violated and the default judgment is not void under Rule 60(b)(4).

## D. Hansen Failed to Argue Below that Because His Co-Defendants Prevailed at Trial the Case Against Him Was Dismissed

Hansen argues that he is dismissed from the suit because the district court stated that it "dismiss[ed] plaintiffs' complaint with prejudice" in its Judgment on Jury Verdict, issued after Hansen's co-defendants, the Lotts, prevailed at trial. This argument appeared nowhere in any of Hansen's briefing before the district court and is therefore waived. "Appellate court review is limited to the evidence, theories and arguments that were presented . . . below." *Obenchain v.*

---

[7] "Any application for a default judgment must contain written certification of the name of the party against whom judgment is requested and the address most likely to give the defendant notice of such default judgment, and the clerk shall use such address in giving such party notice of judgment." I.R.C.P. 55(b)(1).

*McAlvain Constr., Inc.*, 143 Idaho 56, 57, 137 P.3d 443, 444 (2006) (quotation omitted). Accordingly, this Court will not consider the argument of whether the Judgment on Jury Verdict released Hansen as a defendant.

**E.      Meyers Is Entitled to Fees on Appeal**

The court must always award attorney fees to the prevailing party "in commercial transactions." I.C. § 12-120(3). "The term 'commercial transaction' is defined to mean all transactions except transactions for personal or household purposes." *Id.* Fees are required if "the commercial transaction is integral to the claim, and constitutes the basis upon which the party is attempting to recover." *Brower v. E.I. DuPont De Nemours & Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990). Although Hansen characterized the investment as a personal loan to him, Meyers and her late husband invested nearly $300,000 in Ideal Consultants, what they believed was a legitimate attempt to build a revenue-generating program known as the Congressional Accountability Project. This was a fraudulent commercial transaction and Meyers is entitled to attorney fees under I.C. § 12-120(3) in recouping her losses. *Cf. Blimka v. My Web Wholesaler*, 143 Idaho 723, 728–29, 152 P.3d 594, 599–600 (2007) (permitting attorney fees on a goods-purchase fraud claim).

## VI. CONCLUSION

This Court affirms the decision of the district court to deny appellant's motion for relief under Rule 60(b). Costs and fees on appeal are awarded to the respondent.

Chief Justice EISMANN, Justices BURDICK, HORTON and Justice *pro tem* TROUT, **CONCUR**.

11